COMMISSIONER OF INTERNAL REVENUE *v.*
SHAPIRO ET UX.

No. 74–744.  Argued November 5, 1975—Decided March 8, 1976

WHITE, J., delivered the opinion of the Court, in which BURGER, C. J., and BRENNAN, STEWART, MARSHALL, and POWELL, JJ., joined. BLACKMUN, J., filed a dissenting opinion, in which REHNQUIST, J., joined, *post,* p. 634. STEVENS, J., took no part in the consideration or decision of the case.

*Acting Deputy Assistant Attorney General Baum* argued the cause for petitioner. On the brief were *Solicitor General Bork, Assistant Attorney General Crampton, Stuart A. Smith,* and *Ernest J. Brown.*

*Nathan Lewin* argued the cause for respondents. With him on the brief were *Herbert J. Miller, Jr.,* and *Martin D. Minsker.*

MR. JUSTICE WHITE delivered the opinion of the Court.

This case presents questions relating to the scope of the Internal Revenue Code's Anti-Injunction Act, 26 U. S. C. § 7421 (a),[1] in the context of a summary seizure of a taxpayer's assets pursuant to a jeopardy assessment. §§ 6861, 6331, 6213.

## I

Normally, the Internal Revenue Service may not "assess" a tax or collect it, by levying on or otherwise seizing a taxpayer's assets, until the taxpayer has had an opportunity to exhaust his administrative remedies, which include an opportunity to litigate his tax liability

---

[1] Title 26 U. S. C. § 7421 (a) provides in full:

"(a) Tax.

"Except as provided in sections 6212 (a) and (c), 6213 (a), and 7426 (a) and (b)(1), no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed."

fully in the Tax Court, 26 U. S. C. §§ 6212, 6213; [2] and if the Internal Revenue Service does attempt to collect the tax by levy or otherwise, before such exhaustion of remedies in violation of § 6213, the collection is not protected by the Anti-Injunction Act and may be restrained by a United States district court at the instance of the taxpayer. §§ 6213 (a), 7421 (a). The rule is otherwise when the Commissioner proceeds under § 6861 and finds that collection of a tax due and owing from a taxpayer will be "jeopardized by delay" in collection. In such a case, the Commissioner may immediately assess the tax and, upon "notice and demand . . . for payment thereof" followed by the taxpayer's "failure or refusal to pay such

---

[2] Title 26 U. S. C. § 6212 provides in relevant part:

"(a) In general.

"If the Secretary or his delegate determines that there is a deficiency in respect of any tax imposed by subtitles A or B or chapter 42, he is authorized to send notice of such deficiency to the taxpayer by certified mail or registered mail."

Title 26 U. S. C. § 6213 provides in relevant part:

"(a) Time for filing petition and restriction on assessment.

"Within 90 days, or 150 days if the notice is addressed to a person outside the States of the Union and the District of Columbia, after the notice of deficiency authorized in section 6212 is mailed (not counting Saturday, Sunday, or a legal holiday in the District of Columbia as the last day), the taxpayer may file a petition with the Tax Court for a redetermination of the deficiency. Except as otherwise provided in section 6861 no assessment of a deficiency in respect of any tax imposed by subtitle A or B or chapter 42 and no levy or proceeding in court for its collection shall be made, begun, or prosecuted until such notice has been mailed to the taxpayer, nor until the expiration of such 90-day or 150-day period, as the case may be, nor, if a petition has been filed with the Tax Court, until the decision of the Tax Court has become final. Notwithstanding the provisions of section 7421 (a), the making of such assessment or the beginning of such proceeding or levy during the time such prohibition is in force may be enjoined by a proceeding in the proper court."

tax," may immediately levy on the taxpayer's assets. §§ 6861, 6331.[3]  When the Commissioner follows this procedure, the Anti-Injunction Act applies in full force and

---

[3] Title 26 U. S. C. § 6331 provides in relevant part:

"(a) Authority of Secretary or delegate.

"If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary or his delegate to collect such tax (and such further sum as shall be sufficient to cover the expenses of the levy) by levy upon all property and rights to property (except such property as is exempt under section 6334) belonging to such person or on which there is a lien provided in this chapter for the payment of such tax.  Levy may be made upon the accrued salary or wages of any officer, employee, or elected official, of the United States, the District of Columbia, or any agency or instrumentality of the United States or the District of Columbia, by serving a notice of levy on the employer (as defined in section 3401 (d)) of such officer, employee, or elected official.  If the Secretary or his delegate makes a finding that the collection of such tax is in jeopardy, notice and demand for immediate payment of such tax may be made by the Secretary or his delegate and, upon failure or refusal to pay such tax, collection thereof by levy shall be lawful without regard to the 10-day period provided in this section.

"(b) Seizure and sale of property.

"The term 'levy' as used in this title includes the power of distraint and seizure by any means.  A levy shall extend only to property possessed and obligations existing at the time thereof.  In any case in which the Secretary or his delegate may levy upon property or rights to property, he may seize and sell such property or rights to property (whether real or personal, tangible or intangible)."

Title 26 U. S. C. § 6861 provides in relevant part:

"(a) Authority for Making.

"If the Secretary or his delegate believes that the assessment or collection of a deficiency, as defined in section 6211, will be jeopardized by delay, he shall, notwithstanding the provisions of section 6213 (a), immediately assess such deficiency (together with all interest, additional amounts, and additions to the tax provided for by

"no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person." § 7421 (a).

In this case, the Commissioner found, on December 6, 1973, that the imminent departure of respondent Samuel Shapiro (hereinafter Shapiro or respondent) for Israel and the probable departure with him of the assets in his New York bank accounts and safe-deposit boxes jeopardized the collection of income taxes claimed to be due and owing by him for the tax years 1970 and 1971. Accordingly, he assessed income taxes against respondent in the amount of $92,726.41 for the tax years 1970 and 1971. On the same day, he filed liens against respondent and served notices of levy upon various banks in New York State in which respondent maintained accounts or had safe-deposit boxes. These notices of levy effectively froze the money in the accounts—totaling about $35,000—and the contents of the safe-deposit boxes.

At that time respondent Shapiro was under a final order of extradition to Israel, for trial on criminal fraud charges, issued by the United States District Court for the Southern District of New York, and was scheduled to leave for Israel on December 9, 1973—three days later. That date had been set as a result of an agreement between Shapiro and the State of Israel pursuant to which he had withdrawn a petition for writ of certiorari seeking review by this Court of the affirmance of the extradition order by the Court of Appeals for the Second Circuit,

---

law), and notice and demand shall be made by the Secretary or his delegate for the payment thereof.

"(b) Deficiency Letters.

"If the jeopardy assessment is made before any notice in respect of the tax to which the jeopardy assessment relates has been mailed under section 6212 (a), then the Secretary or his delegate shall mail a notice under such subsection within 60 days after the making of the assessment."

*Shapiro* v. *Ferrandina,* 478 F. 2d 894 (1973), and the State of Israel had agreed to grant him a speedy trial when he arrived in Israel and to release him on $60,000 bail pending such trial.

Upon learning of the notices of levy, respondent obtained the consent of the State of Israel to postpone his extradition date until December 16, 1973; and then on December 13, 1973, he initiated the instant lawsuit. Claiming that he owed no taxes; that he could not litigate the issue with the Internal Revenue Service while in jail in Israel; that he would be in jail in Israel, unless he could use the frozen $35,000 as bail money; and that the Internal Revenue Service had deliberately and in bad faith waited until December 6, 1973, before filing its notices of levy precisely in order to place him in this predicament, respondent requested in his complaint an order enjoining his extradition until he had an opportunity to litigate the question whether he owed the Internal Revenue Service any taxes or, in the alternative, an order directing the Internal Revenue Service to lift the notices of levy.

Over the Government's claim that the court lacked jurisdiction over the case by reason of the Anti-Injunction Act and because the timing of an extradition is a matter within the exclusive jurisdiction of the Executive Branch, the District Court granted a temporary restraining order against extradition on December 13, 1973, and set argument on the motion for a preliminary injunction for December 19, 1973, later postponed until December 21, 1973. Interrogatories were then served on the Government inquiring, *inter alia,* into the basis for the assessments. In partial, expedited, response to the interrogatories, the Government stated on December 19, 1973, that respondent was not yet entitled to know the basis for the assessments. Then on December 21,

1973, the Commissioner served counsel for respondent with supplements to the responses to the interrogatories to which were appended notices of deficiency, see 26 U. S. C. § 6212. The notices of deficiency disclosed that the 1970 assessment was based on unexplained cash bank deposits of $18,000 and that the 1971 assessment was based on income in the amount of $137,280 derived from respondent's alleged activities as a dealer in narcotics.[4] On that date, the District Court dissolved the temporary restraining order and granted the Commissioner's motion to dismiss the complaint. The court concluded that the Anti-Injunction Act withdrew its jurisdiction to order the levies to be lifted, and that the timing of the extradition, validly ordered by the United States District Court for the Southern District of New York under a treaty with Israel, was a matter within the exclusive jurisdiction of the State Department.

On December 26, 1973, after respondent had filed a notice of appeal, the Court of Appeals for the District of Columbia Circuit stayed the extradition pending resolution of that appeal.[5] The stay was lifted by the Court

---

[4] The relevant part of the deficiency notice for the year 1970 provided:

"It is determined that you realized unreported taxable income from unexplained bank deposits at the 1st National City Bank in the amount of $18,000.00." App. 135.

The relevant part of the deficiency notice for the year 1971 provided, *id.*, at 136:

"It is determined that you realized unreported taxable income in the amount of $137,280.00 for the taxable year ended December 31, 1971 from your activities as a dealer in narcotics, computed as follows:

| | |
|---|---|
| "Gross income from hashish sales | $381,680.00 |
| "Less: costs | 244,400.00 |
| "Net Income | $137,280.00" |

[5] On January 3, 1974, respondent, armed with his deficiency

of Appeals on February 12, 1974. On May 15, 1974, the Court of Appeals affirmed the District Court's holding that it had no jurisdiction over the extradition order and respondent was extradited several days thereafter.[6] The Court of Appeals, however, disagreed with the District Court that it had no jurisdiction to consider the claim for relief from the levies and remanded for further proceedings. *Shapiro* v. *Secretary of State,* 162 U. S. App. D. C. 391, 499 F. 2d 527 (1974).

The Court of Appeals held that an unresolved fact issue existed on the question whether this case falls within the narrow exception to the Anti-Injunction Act formulated in this Court's decision in *Enochs* v. *Williams Packing Co.,* 370 U. S. 1 (1962).[7] As the court under-

notice, filed in the Tax Court for a redetermination of the deficiency. 26 U. S. C. § 6213 (a).

[6] The extradition issue is therefore no longer in this case.

[7] The Court of Appeals rejected, on the record before it, and on the authority of *Phillips* v. *Commissioner,* 283 U. S. 589 (1931), respondent's claim that the assessment absent a hearing violated the Due Process Clause. It noted, however, that if respondent could establish on remand that his extradition would prevent him from litigating effectively before the Tax Court, then one of the predicates for the *Phillips* decision would be lacking. The court also noted, but did not resolve, a factual dispute as to whether the levy was in conformity with the statute. Shapiro had alleged, for the first time on appeal, that no notice had been given to him or demand made of him to pay the taxes at the time the levies were served. Such notice and demand are required by 26 U. S. C. § 6861, compliance with which is necessary under § 6213 (a), if the Anti-Injunction Act is to apply. The Commissioner claimed that he had mailed a deficiency notice to Shapiro on December 6, 1973.

It is clear that a demand has now been made for payment of the tax assessed and that the levies are now in compliance with § 6213. A notice of deficiency was served on Shapiro's attorney in the District Court on December 21, 1973. The Internal Revenue Service, conceding that it could not be sure whether the original notice of deficiency was mailed before or after the notices of levy were served, served new notices of levy on October 11 and 15,

stood the *Williams Packing* decision, the Anti-Injunction Act does not deprive the District Court of jurisdiction to restrain collection of a tax, if (1) the taxpayer shows "extraordinary circumstances causing irreparable harm" for which he has no "adequate remedy at law," and (2) it is apparent that, under the most liberal view of the law and the facts, the United States " 'cannot establish its claim.' " 162 U. S. App. D. C., at 396, 499 F. 2d, at 532. The court found that Shapiro had satisfied the first test: the money frozen in his New York banks was to be used as bail money in Israel, and without it Shapiro would be incarcerated. Accordingly, his remedy at law—*i. e.,* his ability later to contest the validity of the assessment in the Tax Court or in a suit for a refund—was inadequate. As for the second test, the court concluded that the District Court should not have dismissed the complaint without further inquiry into the factual foundation for the jeopardy assessment and that further proceedings were necessary before finally determining whether upon viewing the law and the facts most favorably to the Government there was "no factual foundation" for the Government's claim that Shapiro was a tax-delinquent narcotics dealer during 1971 and thus no basis for the assessment. Accordingly, the court remanded in order to "allow the District Court . . . to develop a record" and to determine in light of it whether the asserted deficiency was "so arbitrary and excessive" [8] as to be an exaction in the guise of a tax.[9] *Id.,* at 399, 499 F. 2d, at 535.

_____

1974. This moots both the question whether the IRS mailed a notice of deficiency to Shapiro on December 6, 1973, and whether the notice preceded the levies. There can be no question at this point, therefore, that in these respects the levies are in technical compliance with the provisions of § 6861.

[8] This standard, considered by the Court of Appeals to be con-

## II

The Government argues that the order of the Court of Appeals was erroneous because it placed a burden on the Government to prove a factual basis for its assess-

---

sistent with *Enochs* v. *Williams Packing* was based on cases decided by other Courts of Appeals, primarily *Pizzarello* v. *United States*, 408 F. 2d 579 (CA2 1969), and *Lucia* v. *United States*, 474 F. 2d 565 (CA5 1973) (en banc).

[9] Subsequent to the time of the Court of Appeals' order and prior to argument of this case before this Court, several things have concededly occurred of arguable relevance to this lawsuit. First, respondent Shapiro has been extradited, the State of Israel has reduced the amount of his bail and he has been able to meet it. Accordingly, he is not—as the Court of Appeals assumed he would be—incarcerated as a result of the fact that the levies have put the money in the New York banks beyond his reach. Second, the District Court interpreted the Court of Appeals' order in this case to require the Government to come forward with proof sufficient to establish a factual foundation for the tax assessment and to negative a finding that the assessment is "entirely excessive, arbitrary, capricious, and without factual foundation." The Government then made an effort at compliance with the District Court's order, consisting of the filing of an affidavit by the revenue agent who investigated respondent's income tax liabilities. The affidavit states that the basis for the assessments is as follows:

"a. There was no record that Samuel Shapiro had filed an income tax return for 1970.

"b. That Samuel Shapiro had filed an income tax return for 1971 reporting no tax liability based upon $1,600 in adjusted gross income, consisting of $2,600 miscellaneous income from private tutoring and net short-term losses from commodity transactions of $1,450 (limited to $1,000 in computing adjusted gross income).

"c. That deposits were credited to two accounts in the name of Samuel Shapiro at the First National City Bank, New York, Nos.: 04993564 and 05008773, in the amounts of $18,000 in 1970 and $36,735 in 1971.

"d. That . . . Samuel Shapiro paid in excess of $3,000 in currency for the purchase of an automobile.

"e. That information available to the Internal Revenue Service

ment instead of requiring the taxpayer to prove that "under no circumstances could the Government ultimately prevail." *Enochs* v. *Williams Packing Co.,* 370

indicated that early in 1973 Samuel Shapiro paid over $40,000 for a home purchased for over $60,000.

"f. That information supplied to the Internal Revenue Service indicated that Samuel Shapiro had been smuggling into the United States substantial amounts of an illegal substance, hashish, every six days from Israel, presumably for resale within the United States, and also supported a conclusion that Samuel Shapiro was dealing in hashish, during 1971.

"g. That included in the 1971 bank deposits referred to in subparagraph (c) above, were money transfers from an individual since convicted of selling hashish, who stated that the transfers were for hashish supplied to him by Samuel Shapiro as follows:

| | |
|---|---:|
| "April 19, 1971 | $2,000 |
| "April 23, 1971 | 2,300 |
| "May 6, 1971 | 2,000 |
| "May 11, 1971 | 1,500 |
| "June 8, 1971 | 1,500 |
| "August 18, 1971 | 5,600 |

"h. That information available to the Internal Revenue Service indicated that the known practice in hashish trafficking was to deal in full kilos (kilograms), equal to 2.2 pounds; that during 1971 the retail price of hashish was $1,360 to $1,980 per pound, or $2,992 to $4,356 per kilo; and that the wholesale cost to a dealer would approximate $2,350 per kilo; and that the common practice in hashish dealing was to receive payment in two parts—the first for cost and the second for profit.

"i. That on the basis of the information set forth in subparagraphs g. and h. above, [the revenue agent] concluded that during 1971 Samuel Shapiro was dealing in at least 2 kilos of hashish per week, and that his taxable profit therefrom was $137,280, computed as follows:

| | |
|---|---:|
| "Selling price | $7,340 |
| "Cost | 4,700 |
| "Weekly profit | 2,640 |
| "1971 profit (52 weeks) | $137,280 |

U. S., at 7. The Government argues further that since the taxpayer had and still has wholly failed to prove or even plead specific facts establishing that the Government can under no circumstances prevail, the Court of Appeals should have affirmed the District Court's initial dismissal and its decision to the contrary should be reversed.

Respondent argues on the other hand that unless the Government has some obligation to disclose the factual basis for its assessments, either in response to a discovery request or on direct order of the court, the exception to the Anti-Injunction Act provided in *Enochs* v. *Williams Packing Co., supra,* is meaningless. The taxpayer can never know, unless the Government tells him, what the

"j. That unexplained deposits of $18,000 during 1970 should be deemed to be taxable income."

At a hearing held by the District Court on November 12, 1974, respondent submitted two affidavits (which had been filed in the Tax Court) denying that he was or ever had been a dealer in narcotics. Respondent's affidavits further stated that his 1971 income tax return was correct. Respondent also submitted an affidavit of Rachel Laub, a resident of Switzerland, which stated that at respondent's request in 1970, she held for him in safekeeping $50,000 in cash and approximately 18 to 20 kilos of gold bars. That affidavit further stated that at respondent's request, she transmitted the cash to him in 1971, and the proceeds of the sale of the gold bars ($32,000 and $35,000) in 1971 and 1972, respectively. Finally, the District Judge has tentatively ruled that the Government must, if the court is to deny injunctive relief, submit its informant for *in camera* examination by the court. Following the Court's granting of the Government's petition for a writ of certiorari, 420 U. S. 923 (1975), no further proceedings have taken place below.

The proceedings before the District Court on remand and the other events just described are, of course, not before us at this time. These proceedings occurred after the decision of the Court of Appeals which we review. However, the parties appear to agree that these events have occurred as described, and we mention them because they are relevant to the question of what proceedings must eventually be conducted by the District Court following our decision in this case.

basis for the assessment is and thus can never show that the Government will certainly be unable to prevail. We agree with Shapiro.

In *Enochs* v. *Williams Packing Co., supra,* the Court held that an injunction may be obtained against the collection of any tax if (1) it is "clear that under no circumstances could the Government ultimately prevail" and (2) "equity jurisdiction" otherwise exists, *i. e.,* the taxpayer shows that he would otherwise suffer irreparable injury. 370 U. S., at 7. The Court also said that "the question of whether the Government has a chance of ultimately prevailing is to be determined on the basis of the information available to it at the time of the suit," *ibid.* The Government's claim that the Court of Appeals placed on it the burden of justifying its assessment and thereby erroneously applied the *Williams Packing* rule is wrong. *Williams Packing* did not hold that the taxpayer's burden of persuading the District Court that the Government will under no circumstances prevail must be accomplished without any disclosure of information by the Government. It says instead that the question will be resolved on the basis of the information available to the Government at the time of the suit. Since it is absolutely impossible to determine what information is available to the Government at the time of the suit, unless the Government discloses such information in the District Court pursuant to appropriate procedures, it is obvious that the Court in *Williams Packing* intended some disclosure by the Government. Although the Government casts its argument in terms of "burden of proof," the Court of Appeals did not place any technical burden of producing evidence on the Government and it would appear to matter little whether the Government discloses such information because it is said to have the burden of producing evidence on the question or whether it

discloses such evidence by responding to a discovery motion made or interrogatories served by the taxpayer—in which case the burden of producing evidence may be said to have rested with the taxpayer. Thus the Court of Appeals cannot be said to have erred in declining to specify the precise manner in which the relevant facts would be revealed on remand. In either event, under *Williams Packing* the relevant facts are those in the Government's possession and they must somehow be obtainable from the Government.[10]

The Government argues, however, that unless the taxpayer is required to plead specific facts which, if true, would establish that the Government cannot ultimately prevail, then the Anti-Injunction Act is eviscerated. Any taxpayer can allege in conclusory fashion that he owes no tax and, therefore, under the Court of Appeals' decision, any taxpayer may in effect force the Government to justify its assessment in a United States District Court—thereby interfering with a "collateral objective" of the Act, *Enochs* v. *Williams Packing Co., supra*, at 7–8, *i. e.*, to protect the collector from tax litigation outside of the statutory scheme provided by Congress. As the Government's argument itself implicitly concedes, the primary purpose of the Act is not interfered with, since the collection of taxes will not be restrained unless the District Court is persuaded from the evidence eventually adduced that the Government will under no circumstances prevail. We do not understand the Court of Appeals to have departed from this stand-

---

[10] We believe that it is consistent with *Williams Packing* to place the burden of producing evidence with the taxpayer, and to require, if the Government insists, that facts in its sole possession be obtained through discovery. However, nothing we say here should prevent the Government from voluntarily and immediately disclosing the basis for its assessment, which, if sufficient, would terminate discovery proceedings and justify judgment for the Government.

ard enunciated in *Williams Packing,* or to have removed from the taxpayer the ultimate burden, which that decision appears to place on him, of persuading the District Court that it has been met. Moreover, the "collateral objective" of the Act is undercut no more than was contemplated by *Williams Packing.* The taxpayer himself must still plead and prove facts establishing that his remedy in the Tax Court or in a refund suit is inadequate to repair any injury that might be caused by an erroneous assessment or collection of an asserted tax liability. Even then, the Government is not required to litigate fully the taxpayer's liability outside the statutory scheme provided by Congress. It is required simply to litigate the question whether its assessment has a basis in fact.

Our conclusion that the Court of Appeals correctly reversed the judgment of the District Court and remanded for further proceedings is fortified by the fact that construing the Act to permit the Government to seize and hold property on the mere good-faith allegation of an unpaid tax would raise serious constitutional problems in cases, such as this one, where it is asserted that seizure of assets pursuant to a jeopardy assessment is causing irreparable injury. This Court has recently and repeatedly held that, at least where irreparable injury may result from a deprivation of property pending final adjudication of the rights of the parties, the Due Process Clause requires that the party whose property is taken be given an opportunity for some kind of predeprivation or prompt post-deprivation hearing at which some showing of the probable validity of the deprivation must be made.[11] Here the Government seized respondent's prop-

---

[11] *Goldberg* v. *Kelly,* 397 U. S. 254, 264 (1970) (temporary deprivation of welfare payments may deprive recipient of "the very means by which to live while he waits"); *Sniadach* v. *Family Finance Corp.,* 395 U. S. 337, 341–342 (1969) (temporary deprivation of

erty and contends that it has absolutely no obligation to prove that the seizure has any basis in fact no matter how severe or irreparable the injury to the taxpayer and no matter how inadequate his eventual remedy in the Tax Court.[12]

It is true that in *Phillips* v. *Commissioner*, 283 U. S.

---

wages may "drive a wage-earning family to the wall"); *North Georgia Finishing, Inc.* v. *Di-Chem, Inc.*, 419 U. S. 601, 608 (1975) ("probability of irreparable injury" sufficient to warrant preseizure probable-validity hearing); see also *Gerstein* v. *Pugh*, 420 U. S. 103 (1975) (incarceration must be preceded by probable-cause finding or promptly followed by probable-cause hearing); cf. *Regional Rail Reorganization Act Cases*, 419 U. S. 102, 156 (1974) (no probable-cause hearing required where complainant eventually will be "made whole" for any inadequacy in compensation for confiscated property).

[12] We have often noted that, in resolving a claimed violation of procedural due process, a careful weighing of the respective interests is required, *Goss* v. *Lopez*, 419 U. S. 565, 579 (1975); and we have noted that the Government's interest in collecting the revenues is an important one, *Fuentes* v. *Shevin*, 407 U. S. 67, 92 (1972). This interest is clearly sufficient to justify seizure of a taxpayer's assets without a *pre*seizure hearing, *Fuentes* v. *Shevin, supra,* and to remove any need to subject the Commissioner to the burden of an inquiry into the basis for his assessment absent factual allegations of irreparable injury by the taxpayer. *Phillips* v. *Commissioner*, 283 U. S. 589, 595–597 (1931). However, it is very doubtful that the need to collect the revenues is a sufficient reason to justify seizure causing irreparable injury without a prompt post-seizure inquiry of any kind into the Commissioner's basis for his claim.

The taxpayer has no right to start a proceeding before the Tax Court for 60 days following a jeopardy seizure: the IRS may under the statute wait 60 days before it issues the deficiency notice which gives the taxpayer his "ticket to the Tax Court." 26 U. S. C. § 6861. The record does not indicate how quickly a hearing on the merits can be obtained there. Preliminary relief is not there available. Nothing we hold today, of course, would prevent the Government from providing an administrative or other forum outside the Art. III judicial system for whatever preliminary inquiry is to be made as to the basis for a jeopardy assessment and levy.

589 (1931), this Court sustained against constitutional challenge the statutory scheme created by Congress for the litigation of tax disputes and in so doing referred both to the jeopardy assessment provisions and the Anti-Injunction Act, *id.*, at 596 n. 6. However, the *Phillips* case itself did not involve a jeopardy assessment and the taxpayer's assets could not have been taken or frozen in that case until he had either had, or waived his right to, a full and final adjudication of his tax liability before the Tax Court (then the Board of Tax Appeals). The taxpayer's claim in that case was simply that a statutory scheme which would permit the tax to be assessed and collected prior to any *judicial* determination of his liability—by way of a refund suit or review of the Board of Tax Appeals' decision—was unconstitutional.[13] Thus, insofar as *Phillips* may be said to have sustained the constitutionality of the Anti-Injunction Act, as applied to a jeopardy assessment and consequent levy on a taxpayer's assets without prompt opportunity for final resolution of the question of his liability by the Tax Court, it did so only by way of dicta. The dicta were carefully expressed. The Court said:

> "Where, as here, adequate opportunity is afforded for a later judicial determination of the legal rights, summary proceedings to secure prompt performance of pecuniary obligations to the government have been consistently sustained.

> . . . . .

> "Where only property rights are involved, mere postponement of the judicial enquiry is not a denial

---

[13] The taxpayer also challenged unsuccessfully the provision requiring a court of appeals to give deference to a fact determination by the Board of Tax Appeals on review of the Board's decision.

of due process, *if the opportunity given for the ulti-mate judicial determination of the liability is ade-quate. . . ." Id.,* at 595, 596–597. (Emphasis supplied.)

Accordingly, neither the holding nor the dicta in *Phillips* support the proposition that the tax collector may con-stitutionally seize a taxpayer's assets without showing some basis for the seizure under circumstances in which the seizure will injure the taxpayer in a way that cannot be adequately remedied by a Tax Court judgment in his favor. Instead it would appear to be entirely consistent with our more recent holdings.

In any event we are satisfied that under the exception to the Anti-Injunction Act described in the *Williams Packing* case this case may be re-solved by reference to that Act alone. At the time the District Court dismissed the complaint, the Government had done little more than assert that respondent owed taxes in an amount greater than the value of the prop-erty levied—it had alleged that respondent had made an unexplained bank deposit of $18,000 in 1970 and, in a wholly conclusory fashion, that he had received $137,-280 in income from selling hashish.[14] Before the tax-payer had an opportunity to inquire into the factual basis for this conclusory allegation, it was not possible to tell whether the Government had any chance of ulti-mately prevailing. Accordingly, the Court of Appeals properly concluded that the Anti-Injunction Act did not require dismissal of the taxpayer's complaint.

---

[14] We do not decide whether the allegation of an $18,000 unex-plained bank deposit is insufficient to establish income in that amount—for the purposes of the *Williams Packing* test—for the year 1970. The levies, being greatly in excess of the tax due for 1970 in any event, may not be sustained unless the allegations with respect to respondent's tax liability for 1971 are sufficient.

Moreover, we are satisfied that the standard required by the Anti-Injunction Act is at least as favorable to the taxpayer as that required by the Constitution; and that the standard to be applied by the District Court will therefore not be affected by the resolution of the constitutional issue. The Government may defeat a claim by the taxpayer that its assessment has no basis in fact—and therefore render applicable the Anti-Injunction Act—without resort to oral testimony and cross-examination. Affidavits are sufficient so long as they disclose basic facts from which it appears that the Government may prevail. The Constitution does not invariably require more, *Gerstein* v. *Pugh,* 420 U. S. 103 (1975); *Mathews* v. *Eldridge,* 424 U. S. 319 (1976), and we would not hold that it does where collection of the revenues is involved.

Finally, it seems apparent that if the facts do not even disclose "probable cause," *North Georgia Finishing, Inc.* v. *Di-Chem, Inc.,* 419 U. S. 601, 607 (1975); *Gerstein* v. *Pugh, supra,* to support the assessment, the Government would certainly be unable to prevail at trial. Thus the *Williams Packing* standard is consistent with the applicable constitutional standard.

We point out also that a preliminary issue would appear to require resolution on remand. Irreparable injury was, of course, quite properly found by the Court of Appeals. At the time of that court's decision, it appeared that respondent Shapiro had been deprived by the levies of the money needed to post bail in Israel and thereby avoid incarceration. However, it would appear that the basis for the Court of Appeals' finding of irreparable injury has since disappeared. Thus, the District Court's preliminary task on remand will be to determine whether this is so and, if so, whether respondent can

establish some other sort of irreparable injury flowing from the levies.[15]

The judgment of the Court of Appeals is

*Affirmed.*

MR. JUSTICE STEVENS took no part in the consideration or decision of this case.

MR. JUSTICE BLACKMUN, with whom MR. JUSTICE REHNQUIST joins, dissenting.

I would have thought that when the Commissioner of Internal Revenue, on December 21, 1973, provided respondent Samuel Shapiro with supplements to the responses to the interrogatories, at that time, if not before, he surely satisfied and met all that was required to bring the Anti-Injunction Act, 26 U. S. C. § 7421 (a), and the principle of *Enochs* v. *Williams Packing Co.,* 370 U. S. 1 (1962), into full and effective application. It would follow that the District Court's dismissal of the complaint at that point was entirely proper and should have been affirmed.

Given, however, the result the Court very recently reached in *Laing* v. *United States,* 423 U. S. 161 (1976), the decision today, shored up by what seem to me to be

---

[15] We note that it has now been over two years since respondent filed his petition before the Tax Court, and so far as we are informed, there has been no final determination by that court. It may be that for some reason it has been impossible—despite the respondent's best efforts—to obtain a decision by the Tax Court. However, it is also possible that the taxpayer has not vigorously sought such a determination, and has chosen instead to devote most of his energies litigating in the federal courts. If, on remand, the District Court concludes that the absence of a remedy at law at this time is due to respondent's failure to pursue that remedy, then equity will not intervene and the complaint should be dismissed. The inadequacy of his legal remedy would then be due to his own choice not to pursue it.

the inapposite cases cited, *ante,* at 629–630, n. 11, is not unexpected. I am far from certain that the Court is correct, and I am confused by the Court's failure even to cite *Bob Jones University* v. *Simon,* 416 U. S. 725 (1974), and *Commissioner* v. *"Americans United," Inc.,* 416 U. S. 752 (1974), two cases heavily relied upon by the Commissioner here and, I think, of some significance. I observe only that, with *Laing* and the present decision, the Court now has traveled a long way down the road to the emasculation of the Anti-Injunction Act, and down the companion pathway that leads to the blunting of the strict requirements of *Williams Packing* and, now, of Mr. Justice Brandeis' opinion for a unanimous Court in *Phillips* v. *Commissioner,* 283 U. S. 589 (1931). The Court has taken this *Laing-Shapiro* tack, I suspect, as a response to what it deems to be administrative excesses with respect to suspected narcotics operatives who also are, or should be, taxpayers. Whether all this will prove to be stultifying or embarrassing to the collection of the revenues in a more temperate and untroubled time, I do not know. Perhaps, up to a point, the Congress will come to the rescue.

The Court, *ante,* at 624–626, n. 9, demonstrates, of course, that the present case is in a most unsatisfactory posture for review here. It is unfortunate that a case so posed occasions the pronouncement of new and, so far as tax collection efforts are concerned, regressive law.

I would reverse the judgment of the Court of Appeals.