## No. 27575

**Gary L. Antonoff, Carol P. Antonoff, Seymour G. Laff, and Pearle Rae Laff v. City and County of Denver, By Its Manager of Revenue, Elmer A. Johnson; State of Colorado, By the Executive Director of the Department of Revenue, Joseph Dolan; Denver Associates, Inc., a Colorado Corporation; Joseph Shaner, Meyer Shaner, Jack Shaner, William L. Pugh, Richard D. Gasch, and Jack W. Knight, individuals and Midtown Food Corporation**

(577 P.2d 281)

Decided April 10, 1978.                    Rehearing denied May 1, 1978.

Feder & Morris, Harold A. Feder, for plaintiffs-appellees.

Max P. Zall, City Attorney, Donald E. Wilson, Assistant, for defendants-appellants City and County of Denver and Elmer A. Johnson, Its Manager of Revenue.

J. D. MacFarlane, Attorney General, David W. Robbins, Deputy, Edward G. Donovan, Solicitor General, Billy Shuman, Special Assistant, for defendants-appellants Executive Director of the Department of Revenue and State of Colorado.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

The plaintiffs, including Seymour G. Laff, were secured creditors, the security being personal property and fixtures of a Denver restaurant known as "Shaners." The restaurant became delinquent in the payment of taxes to the Internal Revenue Service to the State of Colorado and to the City and County of Denver. The Internal Revenue Service seized the property and subsequently sold some of it to satisfy the taxes due to it. Mr. Laff as a representative of himself and the other plaintiffs, was at the sale. At that time representatives of the State and of the City advised him of their claims against the remaining property.

After the sale, the remaining property was seized by the City for delinquent occupational privilege taxes, personal property taxes, and sales taxes. The State then served distraint warrants on the City for delinquent wage withholding taxes, state sales taxes and Regional Transportation District sales taxes payable by the restaurant operator and owner of its chattels.

Thereafter the plaintiffs filed this action to prevent the sale of the chattels for the City and State taxes. The sale was stayed by the court pending outcome of the action. The plaintiffs then deposited $10,339.76, the amount of the delinquent taxes claimed by the City and State, into the registry of the court. The City and State agreed to look to the monies on deposit, and not to the restaurant chattels, for satisfaction of their respective liens; and under court order possession of the restaurant property was delivered to the plaintiffs.

After hearing the plaintiffs' evidence, the court entered judgment in their favor, from which the State and City took this appeal.

The plaintiffs rely here primarily upon two of the trial court's conclusions of law. The first is that the ordinances and statutes in question deprive secured creditors of procedural due process. The second is that the

City and State were barred by laches from asserting the priority of their tax liens.

■ In connection with the plaintiffs' procedural due process claims, we decline to consider all the questions raised as to facial unconstitutionality of the ordinances and statutes. Rather, we treat only that as to which plaintiffs have standing to challenge, *i.e.*, only that involved in the treatment the plaintiffs received. This consists of the matter of notice and hearing to plaintiffs. If the deposits had not been made in the registry of the court, the court's hearing would have preceded any sale. Therefore, we are not involved in a right to notice prior to sale as by bringing the action the plaintiffs demonstrated that they had notice. Since it appears that the plaintiffs knew of the claims of the City and of the State prior to the seizure by them, it follows that the only violation of due process rights which the plaintiffs can assert is that the hearing did not take place before the seizure.

We hold that this does not constitute a violation of the plaintiffs' procedural due process rights. We note first that plaintiffs were secured creditors as to the seized property and were not in possession of the security at the time of the seizure. Thus, the situation is quite different from those in the cases upon which the plaintiffs rely: *Commissioner v. Shapiro,* 424 U.S. 614, 96 S.Ct. 1062, 47 L.Ed.2d 278 (1976); *North Georgia Finishing v. Di-Chem,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975); *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); and *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). In those cases the persons asserting the deprivation of due process by lack of hearing before seizure were either actually deprived of possession or their taking of possession was prevented. Plaintiffs have not cited any cases in which a non-possessory secured creditor has successfully asserted a deprivation of due process by lack of a hearing prior to seizure of the secured property. Since the secured creditors were not deprived of possession thereby, the seizure was not an immediate, significant harm to them such that a preseizure hearing was required for their benefit.

■ Our ruling is simply that a secured creditor who does not have possession of his security need not be granted a hearing before seizure of his security under a prior tax lien. More than that we need not and do not decide.

■ We next deal with the finding of the trial court that the taxing authorities by their lack of prompt action were barred from asserting the priority of their tax liens. There is no statutory provision stating that if the taxing authority does not act within a certain period of time its lien loses its priority. Thus, the court must have been acting upon some sort of

common law estoppel or laches theory. Even if we assume *arguendo* the propriety of asserting such a remedy against the taxing authorities and also of imposing such a remedy without giving the authorities an opportunity to present countervailing evidence, we still must determine that here there simply was no evidence to support such a remedy.

The judge made no specific written findings as to how long the various taxes had been delinquent before the distraint warrants were served. The closest he came to such a finding was:

"The evidence established the city officials allowed the sales taxes to accrue for a period of four months without exercising the ordinance remedies available, thereby causing the amount of the debts due for unpaid taxes to materially increase."

It appears that the four months the trial court was referring to were, December 1973, January 1974, February 1974, and March 1974.[1] The return for the first delinquent month, December 1973, would not even have been due at the office of the City Manager of Revenue until January 15, 1974. *Denver Revised Municipal Code* 166.12-1. The distraint warrants were issued and served on the plaintiffs at the end of March. Thus, at most, two and one-half months passed between the time the city sales tax December returns became delinquent and the time the distraint warrants were issued and served. This appears to be one of the longest periods of delinquency for all the taxes due.

Under the facts of this case, looking only at the plaintiff's evidence, it was an abuse of discretion to hold that the taxing authorities were barred. Even if the remedy of deprivation of priority could be imposed against a taxing authority, the facts in this case do not warrant it.

Judgment reversed and cause remanded with directions to enter judgment consistent with the views expressed in this opinion.

MR. CHIEF JUSTICE PRINGLE and MR. JUSTICE KELLEY do not participate.

---

[1] There was also testimony to the effect that there was an incomplete payment of the November city sales taxes; however, even if that had been relied upon by the trial court, it would not change our result.