**ZION COPTIC CHURCH, INC., a Florida Corporation not for profit, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 79–5617–Civ–CA.**

United States District Court, S. D. Florida.

March 4, 1980.

Alvarez Le Cesne, Jr., Dept. of Justice, Washington, D. C., for defendant.

Richard S. Rachlin and Murray Sams, Jr., Miami, Fla., for plaintiff.

## ORDER ON MOTION FOR INJUNCTIVE RELIEF AND MOTION TO DISMISS

ATKINS, District Judge.

Plaintiff Zion Coptic Church, Inc. (Coptics) seeks to enjoin the defendant Internal Revenue Service (IRS) from selling the sailing vessel "White Cloud". The IRS seized the "White Cloud" pursuant to a jeopardy tax assessment for the 1974–76 years, 26 U.S.C. § 6861(a), and a jeopardy termination assessment for the 1977–78 years, 26 U.S.C. § 6851(a). These jeopardy procedures are explained in *Laing v. United States*, 423 U.S. 161, 169–71, 96 S.Ct. 473, 478–479, 46 L.Ed.2d 416 (1976).

The Coptics sought judicial review of each of these assessments under 26 U.S.C. § 7429, and this Court determined that each assessment was reasonable. *Zion Coptic Church, Inc. v. United States*, 44 AFTR 2d 79–5022, No. 79–1984–Civ–WMH (S.D.Fla. March 21, 1979). The Coptics petitioned for review in the tax court. See 26 U.S.C. § 6213. The IRS estimates that the Tax Court's review will not be completed before December 31, 1980.

The Coptics have moved for a preliminary injunction to prevent the sale of the "White Cloud" until the Tax Court resolves their case. The Coptics argue that this Court has jurisdiction under 26 U.S.C. § 7421, *Commissioner of Internal Revenue v. Shapiro*, 424 U.S. 614, 96 S.Ct. 1062, 47 L.Ed.2d 278 (1976); *Enochs v. Williams Packing Co.*, 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962), and that it is equitable in this case to assert jurisdiction. *See generally, Canal Authority of State of Florida v. Callaway*, 489 F.2d

567 (5th Cir. 1974). The Coptics contend that the "White Cloud" was illegally and wrongfully seized, that the IRS illegally placed the tax assessments against the Coptics, that any sale of the "White Cloud" is illegal, that the "White Cloud" has been illegally and improperly appraised and that the IRS has no chance of prevailing in the Tax Court with regard to the validity of the jeopardy tax assessment. Complaint, paragraphs 5, 6, 8 and 9, Docket entry 1. The Coptics rely on statutory deficiencies and have not raised constitutional objections to the sale, except to the extent that a seizure and sale of the vessel without notice would violate due process requirements of notice established in *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972).

The IRS has moved to dismiss the complaint for lack of jurisdiction due to the anti-injunctive provisions of 26 U.S.C. § 7421 and the doctrine of sovereign immunity. The IRS also argues that the Court lacks jurisdiction to grant the declaratory relief allegedly sought by the Coptics, and that the complaint should be dismissed because it fails to state a claim.

I. Jurisdiction

The Internal Revenue Code provides that " . . . [n]o suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any Court by any person . . ." 26 U.S.C. § 7421(a). The Supreme Court has created an extremely narrow exception to this broad prohibition that recognizes jurisdiction in the district court only if: 1) it is apparent on the basis of information available at the time of suit that under the most liberal view of the law and the facts, the IRS could not ultimately prevail, and 2) equity jurisdiction otherwise exists. *Enochs v. Williams Packing & Navigation Co.,* 370 U.S. 1, 7, 82 S.Ct. 1125, 1129, 8 L.Ed.2d 292 (1962) construing *Miller v. Standard Nut Margarine Co.,* 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422 (1932).

The *Enochs* case was intended "to be the capstone of judicial construction of the Act," and to spell "an end to a cyclical pattern of allegiance to the plain meaning of the Act, followed by periods of uncertainty caused by a judicial departure from that meaning, and followed in turn by the Court's rediscovery of the Act's purpose." *Bob Jones University v. Simon,* 416 U.S. 725, 742, 94 S.Ct. 2038, 2048, 40 L.Ed.2d 496 (1974). The Court has found no jurisdiction in several cases after the *Bob Jones* decision. *Commissioner of Internal Revenue v. Shapiro,* 424 U.S. 614, 96 S.Ct. 1062, 47 L.Ed.2d 278 (1976); *United States v. American Friends Service Committee,* 419 U.S. 7, 95 S.Ct. 13, 42 L.Ed.2d 7 (1974); *Alexander v. "Americans United" Inc.,* 416 U.S. 752, 94 S.Ct. 2053, 40 L.Ed.2d 518 (1974). *Cf., Laing v. United States,* 423 U.S. 161, 96 S.Ct. 473, 46 L.Ed.2d 416 (1976) (jurisdiction exists when IRS fails to follow 26 U.S.C. § 6861 procedure).

In ordinary circumstances, the IRS is compelled to notice owners and to sell seized property promptly. 26 U.S.C. § 6335(b). This prompt sale is stayed, however, when certain circumstances are met. See 26 U.S.C. § 6335(f), incorporating by reference 26 U.S.C. § 6863(b)(3). The stay provisions in 26 U.S.C. § 6863(b)(3), as amended in 1976, provide, in relevant part, that property seized pursuant to assessments under sections 6851 or 6861 shall not be sold 1) before the day a judgment in a 26 U.S.C. § 7429(b) action becomes final, if such an action is filed. (§ 6863(b)(3)(A)(i) incorporates by reference the periods described in § 6863(c)(1)(A)); 2) before the issuance of a notice of deficiency described in § 6851(b) or § 6861(b), and the expiration of the period provided in § 6213(a) for filing a petition with the Tax Court; 3) if a petition is filed with the Tax Court, before the expiration of the period during which the assessment of the deficiency would be prohibited if neither sections 6851(a) nor 6861(a) were applicable.

Despite these staying provisions, the seized property may be sold if " . . . the Secretary or his delegate determines that the expenses of conservation and maintenance will greatly reduce net proceeds . . . " 26 U.S.C. § 6863(b)(3)(B)(ii).

The question of the Court's jurisdiction in this case depends on whether actions against the IRS for allegedly failing to comply with the stay provisions of 26 U.S.C. § 6863(b) are suits "for the purpose of restraining the assessment or collection of any tax . . ." as those terms are used in 26 U.S.C. § 7421(a). The Court has found no precedent on this question.

■ The purpose of section 7421(a) is to protect "the Government's need to assess and collect taxes as expeditiously as possible with a minimum of preenforcement judicial interference, 'and to require that the legal right to the disputed sums be determined in a suit for refund.' [citation omitted]," and to protect "the collector from litigation pending a suit for refund." *Bob Jones University v. Simon*, 416 U.S. 725, 736–37, 94 S.Ct. 2038, 2046, 40 L.Ed.2d 496 (1974). The goal of the statute is to refrain from suspending collection of taxes. *Enoch v. Williams Packing & Navigation Co.*, 370 U.S. 1, 8, 82 S.Ct. 1125, 1129, 8 L.Ed.2d 292 (1962). If taxpayers could "postpone" paying taxes, particularly in the jeopardy assessment context, by filing an action, many frivolous suits would result in order to delay payment. More importantly, the essential process of collection of taxes might be seriously hampered if large numbers of taxpayers sought to delay payment of taxes by filing suits.

■ An action to review the IRS's decision to sell property would clearly not affect the assessment of taxes. The question of affecting the collection of taxes is more difficult. The Government has in some respects already "collected" the tax in the form of the seized asset, but the collection is not complete because the property is not a readily negotiable form of payment.

If the asset is perishable, or if the cost of maintaining the asset would substantially reduce the proceeds generated for satisfaction of the tax liability, judicial action to review the IRS's determination to sell would interfere with the collection of the tax. These situations of perishable commodities and uneconomical retention of the asset are two categories of exceptions to the stay provisions of section 6863(b)(3)(A). See 26 U.S.C. § 6863(b)(3)(B); 1954 U.S. Code Cong. & Admin.News pp. 4025, 5247. In jeopardy situations in which no other assets are available, the diminution of value may prevent collection of taxes.

Further evidence that the sale of assets is part of the collection process can be seen in Congressional arrangement of Title 26, the Internal Revenue Code. Chapter 64 of the Internal Revenue Code, 26 U.S.C. §§ 6301–6428 is entitled "Collection." Subchapter D is entitled "Seizure of property for taxes". 26 U.S.C. §§ 6331–44. The clear implication of this arrangement is that sale of seized property is a procedure that occurs prior to the completion of the collection process, and is therefore a part of the collection process.

Section 6863 is entitled "Stay of collection of jeopardy assessments." Subsection (b)(3)(A), the portion of the statute under analysis in this jurisdictional question, is entitled "Stay of sale of seized property pending Tax Court decision", and states, inter alia, that "the property seized for the collection of the tax shall not be sold . . ." This arrangement and syntax also implies that sale of property is part of the collection process.

Congress expressly provided for certain exceptions to the anti-injunction statute. *See* 26 U.S.C. § 7421(a). Congress excluded several categories of cases from the prohibitive effect of section 7421(a) when it stated "[e]xcept as provided in sections 6212(a) and (c), 6213(a), and 7426(a) and (B)(1), and 7429(b), no suit . . . shall be maintained . . .." 26 U.S.C. § 7421(a). The failure to include actions under 26 U.S.C. § 6863(b)(3) within these express exceptions to section 7429(b) implies that Congress did not intend the decision to sell the property to be reviewable.

Finally, permitting actions to consider decisions made under section 6863(b) would conflict with each of the purposes that the Supreme Court has found to underlie enactment of the anti-injunctive statute. Review of section 6863(b) decisions would subject the IRS to precollective litigation. The

tax would not be completely collected before this issue would be judicially determined. *See generally Bob Jones University v. Simon,* 416 U.S. 725, 736–37, 94 S.Ct. 2038, 2045–46, 40 L.Ed.2d 496 (1974). It is apparent that an action to contest section 6863(b) decisions is within the prohibitions of 26 U.S.C. § 7421(a). It then becomes necessary to determine whether the Coptic's actions are within the exceptions to section 7421(a).

■ As stated above, if the taxpayer can demonstrate that under no circumstances could the Government ultimately prevail on the merits, and that irreparable injury would occur, the Court may enjoin IRS action despite section 7421(a). *Bob Jones University v. Simon,* 416 U.S. 725, 737, 94 S.Ct. 2038, 2046, 40 L.Ed.2d 496 (1974). The test is relatively easy to apply to actions seeking to enjoin preseizure assessment or collection, in that the question to examine to determine whether the Government could ultimately prevail is whether there are any taxes owing. In contrast, in the stay of sale of seized assets under 26 U.S.C. § 6863(b)(3)(B)(ii) it would appear that the relevant question would be whether the Government could prevail under any circumstances on the issue of whether the expenses of conservation and maintenance will greatly reduce the net proceeds. It seems necessary to allow the Court to adopt the latter inquiry. Otherwise, due to the entirely independent nature of the inquiries a finding of jurisdiction under the tax liability question would bear no relationship to the sale question and vice versa. This would subject the rationality of the test as applied in these special circumstances to serious question.

■ This Court holds that in determining whether an action to review the IRS's decision under 26 U.S.C. § 6863(b)(3)(B)(ii) to sell seized property is within the exception to 26 U.S.C. § 7421(a), the Court should consider whether the Government could prevail under any circumstances on the question of whether the expenses of conservation and maintenance of the asset will greatly reduce the net proceeds. The Court should not look to whether the Government could prevail under any circumstances on the question of the taxpayer's tax liability.

■ In applying this standard to the IRS's decision to sell the "White Cloud", the Court concludes that the IRS could prevail on the expenses of conservation and maintenance question under some circumstances. The Court concludes, *infra,* that the sale would be an abuse of discretion, but this conclusion is clearly a matter upon which reasonable persons could differ.

The Court has concluded that the Coptics have failed to demonstrate that the Government could not prevail. This holding compels the denial of the Coptics' motion for injunctive relief for the 1974–78 assessments and the granting of the IRS's motion to dismiss, and the motions are respectively denied and granted. The Court nevertheless makes the following findings and conclusions, which become relevant to the case if the Court has erred in its holding.

1. The Coptics have not demonstrated that equity jurisdiction would otherwise exist in this case because there is no evidence that there is anything unique or unusual about the "White Cloud". There was testimony that there have been several similar vessels on the market in recent times.

2. The IRS's decision to sell the vessel is an abuse of discretion. The appraisals of the vessel ranged from $55,000 to over $110,000.00. The Court finds that it is impossible to determine a reasonable estimate within this range because the vessel has not been ultrasonically gauged recently to determine the thickness of the vessel's hull.

The "White Cloud" is a steel hulled sailing vessel approximately 60 feet long, and was built in 1971. Steel hulled vessels deteriorate in the water and their value is determined in large part by the remaining thickness of the hull. This thickness is measured by removing the vessel from the water and ultrasonically gauging the hull. It would cost approximately $1,000.00 to haul and gauge the "White Cloud". Without this procedure prospective buyers would be bidding on a "pig in the poke" and the

**40**

proceeds realized would be far less than if the vessel was gauged.

In view of the relatively small cost of gauging the vessel and the resulting increase in profits, the Court finds that any ordinary business person would gauge the vessel before offering it for sale, and the IRS's failure to do so is an abuse of discretion.

II. The 1978 Assessment

The above findings of fact and conclusions of law apply only to the sale of the vessel pursuant to the 1974–77 assessments. The Coptics did not file a tax return for the 1978 year, and section 6863(b)(3) states "[c]lauses (ii) and (iii) shall not apply in the case of a termination assessment under section 6851 if a taxpayer does not file a return for the taxable year by the due date . . ." Clauses (ii) and (iii) provide for the stay of the sale of the "White Cloud". The failure to file a return for the 1978 year renders the stay provisions inapplicable to the "White Cloud" for the 1978 year. The Coptics' motion for injunctive relief is denied on this ground.

The IRS's motion to dismiss the case as to the 1978 assessment is granted because of this failure to file a return and the resulting legal consequences.

This case is dismissed for lack of jurisdiction.