67 S.Ct. 1599, 91 L.Ed. 2022. Yet the United States was not willing that labor and materials incorporated in the structures built for it should go unpaid for, and hence insisted upon the payment bond.

The United States, in requiring the contractor to agree to pay its laborers and materialmen, and in requiring it to furnish a bond to insure that they would be paid, acquired a right against the contractor that they should be paid. We suppose that, if in such a situation the bondsman should, during the performance of the contract, become insolvent so that it could not, if need be, pay the laborers and materialmen, the United States could withhold money otherwise due the contractor and pay them. When, therefore, the plaintiff surety paid Pennsylvania Drydock's laborers and materialmen, it was satisfying two obligations of the contractor, one to its laborers and materialmen who were general creditors, the other to the United States which was a preferred creditor because of its possession of funds which could be used as an offset against the contractor. By satisfying the latter obligation, the plaintiff surety became entitled to be subrogated to the security which the United States held, i. e., the funds in its hands. This problem is thoroughly treated in Judge Whitaker's opinion in National Surety Corporation v. United States, 133 F.Supp. 381, 132 Ct.Cl. 724. See also Hadden v. United States, 132 F.Supp. 202, 132 Ct.Cl. 529; Royal Indemnity Co. v. United States, 93 F.Supp. 891, 117 Ct.Cl. 736.

The plaintiff's motion to dismiss the answer of the third parties, the trustees, will nevertheless not be granted. If, as this litigation progresses, it should develop that the alleged debts of some $52,000 of Pennsylvania Drydock to the United States are not proved, or that for any reason the proved claims of the plaintiff do not exhaust the funds owed Pennsylvania Drydock by the United States, the third parties would be entitled to a judgment.

The plaintiff's motion to dismiss the answer of the third parties is denied.

It is so ordered.

JONES, Chief Judge, and WHITAKER, Judge, concur.

LARAMORE, Judge, concurring in the result:

I concur that plaintiff's motion to dismiss the answer of the trustees should be denied but rather for the reasons given in my dissenting opinion in Hadden, Trustee v. United States, 132 Ct.Cl. 529, 532.

**GENERAL OUTDOOR ADVERTISING CO., Inc.,**
v.
**UNITED STATES.**
No. 270-52.

United States Court of Claims.
Feb. 11, 1959.

Spaulding F. Glass, Chicago, Ill., for plaintiff.

H. S. Fessenden, Washington, D. C., with whom was Asst. Atty. Gen. Charles K. Rice, for defendant. James P. Garland, Washington, D. C., was on the brief.

WHITAKER, Judge.

This controversy arose under this court's Rule 38(c), 28 U.S.C., concerning the amount of tax which plaintiff is entitled to recover under our previous decision in this case, reported in 149 F. Supp. 163, 137 Ct.Cl. 607. In that opinion we held that the Commissioner of Internal Revenue had erroneously reduced the value of plaintiff's land and buildings. However, we also held that the claim for refund based upon this erroneous valuation was not an amendment of the original claim, but rather an independent claim, from which it follows that plaintiff can only recover the payments of tax made within two years prior to the date it was filed, which was April 3, 1950. Section 322(b) of the Internal Revenue Code of 1939, 26 U.S.C. § 322(b), permits recovery if "the tax was paid" within two years of the filing of the claim for refund.

The question presented is the date a remittance of $225,000 and interest by the taxpayer in August 1947 shall be credited as a tax payment on account of the taxpayer's liability for additional taxes for 1944. This remittance was made prior to any assessment or a notice of a deficiency from the Commissioner on account of such liability, but after receipt of the revenue agent's report recommending the assessment of a larger deficiency.

The Government says this was a voluntary payment by the taxpayer of an amount of additional tax which is admitted it owed for that year, and must be considered as the payment, in August 1947, of taxes due for 1944, although no assessment of additional taxes had been made at that time.

The plaintiff, on the other hand, says that the remittance in 1947 was merely

"on account", or a deposit, in anticipation of an assessment, to take care of one when made, and that the subsequent assessment in October 1947 was of no effect, because: (1) the plaintiff was not given a deficiency notice ninety days before the assessment, as provided by section 272(a) (1) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 272(a) (1); and (2) because the assessment list was not signed by the Commissioner personally, but by an agent, who, under authority from the Commissioner, had signed the Commissioner's name thereto. Hence, it says the assessment was void, from which it follows there was no assessment to which the remittance of $225,000 could be applied, and that it could not lawfully be applied in part settlement of plaintiff's tax liability for 1944 until the amount of that liability had been determined. That determination was in 1948, within two years of the filing of the claim for refund.

In May 1947 an internal revenue agent examined plaintiff's tax returns for the years 1941, 1942, 1943, and 1944. For the year 1944, the only year involved here, the agent's report showed a net deficiency in excess profit tax of $316,-377.04. A copy of this report was furnished plaintiff with a letter dated July 23, 1947, which enclosed a form for "waiver and acceptance" and one for acknowledgement of receipt of the report with an expression of the taxpayer's position with respect to it, but the letter stated that this was "not a final notice of deficiency."

Plaintiff did not execute the form for waiver and acceptance, but it did execute the form headed "Receipt of Revenue Agent's Report." This form first acknowledged receipt of the report, and then read:

The position of the undersigned with respect to the disposition of the findings disclosed by the report is indicated by a check mark:

1. Revenue Agent's findings are agreed to ...... ☐
   (a) Signed Agreement Form 874 is enclosed herewith ......................... ☐
   (b) Signed Agreement Form 874 has already been forwarded to your office ......... ☐
   (c) Payment of any deficiency in tax indicated above has already been made to Collector of Internal Revenue (in part —not protested) .................... ☒
   (d) Payment of any deficiency in tax indicated above will be made to the Collector of Internal Revenue upon receipt of notice and demand, and no objection will be made to the immediate assessment of the tax ............................ ☐
2. Revenue Agent's findings are not agreed to .. ☒
3. Protest will be filed within the allotted time ... ☒
4. I do not intend to protest these findings ...... ☐

———◆———

By this the taxpayer said it did not agree with the agent's report in full, and that it meant to file a protest, but not to the report in its entirety, but only in part, and that it was enclosing check in part payment.

The document was enclosed in a letter of the same date, which read in part:

"* * * Part of the net tax will be made the subject of a Protest to be filed with the agent in charge.

"It is our purpose hereby to stop the further running of interest on the net tax deficiency for 1944 by making a payment on account of so many dollars in principal of tax and so many dollars of interest on such tax. Therefore, find enclosed herewith a check payable to your order in the sum of $225,000.00 to apply on the tax principal and another check payable to your order for $33,750.00 to apply on interest accrued on the tax deficiency for this year."

Enclosed also were two checks, one for $225,000 on account of the 1944 tax deficiency, and the other for $33,750 as accrued interest.

Upon receipt of these checks, the collector charged them to its 9–D unclassified collection account, since at that time there was no unpaid assessment for 1944 against plaintiff to which the payment could be credited. About two months later, on October 10, 1947, without the plaintiff's knowledge, an assessment for the year 1944 of $225,000 as excess profits tax and $32,625 as interest, computed to August 15, 1947, was duly certified under the signature of Commissioner Schoeneman. The list was in fact signed by an employee in the office of the Commissioner, who had been previously authorized in writing by Mr. Schoeneman to sign Mr. Schoeneman's name to such lists. About a month after the assessment, on November 14, 1947, the sums were transferred by the collector from his 9–D account and credited against the assessment of October 10, 1947. This was more than two years before the claim for refund was filed.

A refund of $1,125, as an overpayment of this assessment, was the first actual notice plaintiff had of this assessment. This was in April 1948.

Plaintiff first contends that the October 10 assessment was invalid, because notice of the proposed assessment was not given, as provided by section 272(a) (1), supra. That section provides as follows:

"*Petition to The Tax Court of the United States.* If in the case of any taxpayer, the Commissioner determines that there is a deficiency in respect of the tax imposed by this chapter, the Commissioner is authorized to send notice of such deficiency to the taxpayer by registered mail. Within ninety days after such notice is mailed (not counting Saturday, Sunday, or a legal holiday in the District of Columbia as the ninetieth day) the taxpayer may file a petition with the Tax Court of the United States for a redetermination of the deficiency. No assessment of a deficiency in respect of the tax imposed by this chapter and no distraint or proceeding in court for its collection shall be made, begun, or prosecuted until such notice has been mailed to the taxpayer, nor until the expiration of such ninety-day period, nor, if a petition has been filed with the Tax Court, until the decision of the Tax Court has become final. Notwithstanding the provisions of section 3653(a) the making of such assessment or the beginning of such a proceeding or distraint during the time such prohibition is in force may be enjoined by a proceeding in the proper court. * * * "

■■ The purpose of this section is to allow a taxpayer to contest in the Tax Court a deficiency in tax which the Commissioner has found to be due, prior to payment. But, if the taxpayer states that he does not care to contest it, of course the notice need not be sent, since it is sent only to permit a contest in the Tax Court, and the assessment may be made forthwith. Here the taxpayer stated it meant to protest the action proposed by the revenue agent only in part, and sent its check for $225,000 in part payment of the asserted liability of $316,377.04. Five days later, it filed its protest against two alleged errors of the revenue agent. Thus, by its statement that it meant to protest the payment only in part, and by its payment of the amount of $225,000 on account of the proposed deficiency, the taxpayer admit-

ted liability for $225,000 of the proposed deficiency.

In such circumstances the Commissioner of Internal Revenue was justified in making the assessment of the $225,000 and in satisfying it with plaintiff's remittance of that amount. As to that amount plaintiff waived the notice required by section 272(a) (1). Cf. Lehigh Portland Cement Co. v. United States, 30 F.Supp. 217, 90 Ct.Cl. 36.

■ The plaintiff's second contention is that the assessment is void because the Commissioner did not sign it personally. There is no statutory requirement that he do so. Section 3901(a) (1) provides that the Commissioner of Internal Revenue shall have "general superintendence" of the assessment and collection of all taxes. 26 U.S.C. § 3901 (1952 ed.). Anyone at all acquainted with the magnitude of the task of making assessments of internal revenue taxes knows that Congress by the use of the words "general superintendence" did not intend the Commissioner to act personally on all collections and assessments. All assessments are made in his name, but he does not make them himself, but through subordinates. Nor need he himself sign the assessment lists, of which there are many, many thousands. As the trial commissioner points out in finding 4, if the Commissioner of Internal ·Revenue was required to sign such documents personally, he would have but little, if any, time for his other duties. Such signing may be done by the Commissioner personally, or his name may be subscribed by another under his direction. See L. J. Christopher v. Co. Commissioner, 60 App.D.C. 368, 55 F.2d 530.

■ It follows, therefore, that the October 10, 1947, assessment and the subsequent application thereto of the remittance of $225,000 were valid, and the April 3, 1950, refund claim as to that amount is barred by the two-year statute of limitations.

However, the refund claim is valid as to the 1944 and 1945 taxes which were assessed and paid after April 3, 1948. On this account plaintiff is entitled to recover a net overpayment for 1944 of $60,460.47; and a net overpayment for 1945 of $48,221.41. Judgment shall be entered for $108,681.88, with interest as provided by law.

*It is so ordered.*

REED, Justice (Retired), sitting by designation, JONES, Chief Judge, and LARAMORE and MADDEN, Judges, concur.

AUTOMATIC SCREW PRODUCTS COMPANY

v.

UNITED STATES.

No. 397–57.

United States Court of Claims.

Feb. 11, 1959.

