Salvador MADRIGAL, aka Felipe Renteria, Plaintiff,

v.

DISTRICT DIRECTOR OF INTERNAL REVENUE, INTERNAL REVENUE SERVICE, LOS ANGELES, CALIFORNIA, Defendant.

Civ. No. 73–986–AAH.

United States District Court,
C. D. California.

June 3, 1976.

Phillip Singer, Beverly Hills, Cal., for plaintiff.

William D. Keller, U. S. Atty., Charles H. Magnuson, Asst. U. S. Atty., Chief, Tax

**406**

Div., Washington, D. C., J. Clancy Wilson, Asst. U. S. Atty., for defendant.

## DECISION, FINDINGS OF FACT AND CONCLUSIONS OF LAW, AND ORDER FOR JUDGMENT FOR DEFENDANT

HAUK, District Judge.

The present matter was tried on December 19, 1975, for purposes of determining whether amended tax returns signed by the plaintiff were forced upon him by ruse, coercion, threat or intimidation. Having considered the testimony of the witnesses, the documents offered and admitted at trial, the argument of counsel, the pleadings, motions, memorandum in support, and the recent Supreme Court decision in *Commissioner of Internal Revenue v. Shapiro*, 424 U.S. 614, 96 S.Ct. 1062, 47 L.Ed.2d 278, 44 U.S.L.W. 4313 (1976) the following are the Court's findings of fact and conclusions of law.

### Nature of the Action

1. The present suit was instituted on May 3, 1973, by the plaintiff's "Action for Injunction Against Enforcement of Wrongful Levy." The plaintiff alleges that he is a citizen of Mexico, and has been employed in the United States as a full time employee of a domestic corporation since 1967. The plaintiff further alleges that on August 13, 1971, he applied for a permanent resident visa at the American Embassy in Mexico City, for the purpose of entering the United States as a legal permanent citizen. It is further alleged by the plaintiff that an employee of the Internal Revenue Service at the Office of the International Operations of the Internal Revenue Service prepared amended Federal Income Tax Returns (Forms 1040NR) for the years 1968, 1969 and 1970. The plaintiff alleges that he was coerced into signing the amended Federal Income Tax Returns. It is alleged that the plaintiff was told that unless he signed the amended tax returns he would lose his priority for entry into the United States.

2. On August 16, 1973, the United States filed a motion to dismiss the plaintiff's complaint for injunctive relief. The basis for the Government's motion to dismiss was that the plaintiff had an adequate remedy of law by paying the additional assessment due and by simply submitting an administrative claim for refund with the Internal Revenue Service. The Government argued in its motion to dismiss that if the administrative claim for refund were denied, plaintiff may bring an action in the United States District Court for a refund of the taxes paid. It was further argued by the United States that since the plaintiff had not followed the statutory prerequisite of filing an administrative claim for refund, the present lawsuit was barred by Sections 7421[1] and 7422[2] of the Internal Revenue Code of 1954 (Title 26, United States Code).

3. On or about August 28, 1973, the plaintiff filed a first amended complaint

1. **§ 7421. *Prohibition of suits to restrain assessment or collection***

    (a) *Tax.*—Except as provided in sections 6212(a) and (c), 6213(a), and 7426(a) and (b)(1), no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.

    (b) *Liability of transferee or fiduciary.*—No suit shall be maintained in any court for the purpose of restraining the assessment or collection (pursuant to the provisions of chapter 71) of—.

    (1) the amount of the liability, at law or in equity, of a transferee of property of a taxpayer in respect of any internal revenue tax, or

    (2) the amount of the liability of a fiduciary under section 3467 of the Revised Statutes (31 U.S.C. 192) in respect of any such tax.

    26 U.S.C. 7421

2. **§ 7422. *Civil actions for refund***

    (a) *No suit prior to filing claim for refund.*—No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary or his delegate, according to the provisions of law in that regard, and the regulations of the

Secretary or his delegate established in pursuance thereof.

(b) *Protest or duress.*—Such suit or proceeding may be maintained whether or not such tax, penalty, or sum has been paid under protest or duress.

(c) *Suits against collection officer a bar.*—A suit against any officer or employee of the United States (or former officer or employee) or his personal representative for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected shall be treated as if the United States had been a party to such suit in applying the doctrine of res judicata in all suits instituted after June 15, 1942, in respect of any internal revenue tax, and in all proceedings in the Tax Court and on review of decisions of the Tax Court where the petition to the Tax Court was filed after such date.

(d) *Credit treated as payment.*—The credit of an overpayment of any tax in satisfaction of any tax liability shall, for the purpose of any suit for refund of such tax liability so satisfied, be deemed to be a payment in respect of such tax liability at the time such credit is allowed.

(e) *Stay of proceedings.*—If the Secretary or his delegate prior to the hearing of a suit brought by a taxpayer in a district court or the Court of Claims for the recovery of any income tax, estate tax, gift tax, or tax imposed by chapter 42 or 43 (or any penalty relating to such taxes) mails to the taxpayer a notice that a deficiency has been determined in respect of the tax which is the subject matter of taxpayer's suit, the proceedings in taxpayer's suit shall be stayed during the period of time in which the taxpayer may file a petition with the Tax Court for a redetermination of the asserted deficiency, and for 60 days thereafter. If the taxpayer files a petition with the Tax Court, the district court or the Court of Claims, as the case may be, shall lose jurisdiction of taxpayer's suit to whatever extent jurisdiction is acquired by the Tax Court of the subject matter of taxpayer's suit for refund. If the taxpayer does not file a petition with the Tax Court for a redetermination of the asserted deficiency, the United States may counterclaim in the taxpayer's suit, or intervene in the event of a suit as described in subsection (c) (relating to suits against officers or employees of the United States), within the period of the stay of proceedings notwithstanding that the time for such pleading may have otherwise expired. The taxpayer shall have the burden of proof with respect to the issues raised by such counterclaim or intervention of the United States except as to the issue of whether the taxpay-er has been guilty of fraud with intent to evade tax. This subsection shall not apply to a suit by a taxpayer which, prior to the date of enactment of this title, is commenced, instituted, or pending in a district court or the Court of Claims for the recovery of any income tax, estate tax, or gift tax (or any penalty relating to such taxes).

(f) *Limitation on right of action for refund.*—

(1) *General rule.*—A suit or proceeding referred to in subsection (a) may be maintained only against the United States and not against any officer or employee of the United States (or former officer or employee) or his personal representative. Such suit or proceeding may be maintained against the United States notwithstanding the provisions of section 2502 of title 28 of the United States Code (relating to aliens' privilege to sue) and notwithstanding the provisions of section 1502 of such title 28 (relating to certain treaty cases).

(2) *Misjoinder and change of venue.*—If a suit or proceeding brought in a United States district court against an officer or employee of the United States (or former officer or employee) or his personal representative is improperly brought solely by virtue of paragraph (1), the court shall order, upon such terms as are just, that the pleadings be amended to substitute the United States as a party for such officer or employee as of the time such action commenced, upon proper service of process on the United States. Such suit or proceeding shall upon request by the United States be transferred to the district or division where it should have been brought if such action initially had been brought against the United States.

(g) *Special rules for certain excise taxes imposed by chapter 42 or 43.*—

(1) *Right to bring actions.*—With respect to any act (or failure to act) giving rise to liability under sections 4941, 4942, 4943, 4944, 4945, 4971, or 4975, payment of the full amount of tax imposed under section 4941(a) (relating to initial taxes on self-dealing), section 4942(a) (relating to initial tax on failure to distribute income), section 4943(a) (relating to initial tax on excess business holdings), section 4944(a) (relating to initial taxes on investments which jeopardize charitable purpose), section 4945(a) (relating to initial taxes on taxable expenditures), 4971(a) (relating to initial tax on failure to meet minimum funding standard), 4975(a) (relating to initial tax, on prohibited transactions), section 4941(b) (relating to additional taxes on self-dealing), section 4942(b) (relating to additional tax on failure to distribute income), section 4943(b) (relating to additional tax on excess business holdings), section 4944(b) (relating to additional taxes on investments which jeopardize charitable purpose), section 4945(b) (relating to additional taxes on taxa-

asserting again the coercion described in the first complaint and further alleging that the amended returns signed by the taxpayer were, "in effect assessed . . . as supplemental assessments under IRC Section 6204(a)." [3] Accordingly, the plaintiff alleged that the Internal Revenue Service was required to send a notice of deficiency pursuant to Section 6213 [4] of the Internal Revenue Code of 1954. The prayer for relief seeks to enjoin the Government from enforcing any tax levy or lien relating to the amended tax returns.

4. On December 14, 1973, the United States filed its motion to dismiss the first amended complaint. The position of the United States in support of its motion to dismiss was that Section 6213 [5] requires that a notice of deficiency be mailed to the taxpayer only where there is a deficiency as statutorily defined in Section 6211 [6] of the

---

3. § 6204. *Supplemental assessments*

   (a) *General rule.*—The Secretary or his delegate may, at any time within the period prescribed for assessment, make a supplement assessment whenever it is ascertained that any assessment is imperfect or incomplete in any material respect.

   26 U.S.C. § 6204(a).

4. § 6213. *Restrictions applicable to deficiencies; petition to Tax Court*

   (a) *Time for filing petition and restriction on assessment.*—Within 90 days, or 150 days if the notice is addressed to a person outside the States of the Union and the District of Columbia, after the notice of deficiency authorized in section 6212 is mailed (not counting Saturday, Sunday, or a legal holiday in the District of Columbia as the last day), the taxpayer may file a petition with the Tax Court for a redetermination of the deficiency. Except as otherwise provided in section 6861 no assessment of a deficiency in respect of any tax imposed by subtitle A or B, chapter 42, or chapter 43 and no levy or proceeding in court for its collection shall be made, begun, or prosecuted until such notice has been mailed to the taxpayer, nor until the expiration of such 90-day or 150-day period, as the case may be, nor, if a petition has been filed with the Tax Court, until the decision of the Tax Court has become final. Notwithstanding the provisions of section 7421(a), the making of such assessment or the beginning of such proceeding or levy during the time such prohibition is in force may be enjoined by a proceeding in the proper court.

   26 U.S.C. § 6213

5. See Footnote 4 above.

   26 U.S.C. § 6213

6. § 6211. *Definition of a deficiency*

   (a) *In general.*—For purposes of this title in the case of income, estate, and gift taxes imposed by subtitles A and B and excise taxes imposed by chapters 42 and 43, the term "deficiency" means the amount by which the tax imposed by subtitle A or B, or chapter 42 or 43, exceeds the excess of—

---

ble expenditures), section 4971(b) (relating to additional tax on failure to meet minimum funding standard), or section 4975(b) (relating to additional tax on prohibited transactions) shall constitute sufficient payment in order to maintain an action under this section with respect to such act (or failure to act).

(2) *Limitation on suit for refund.*—No suit may be maintained under this section for the credit or refund of any tax imposed under sections 4941, 4942, 4943, 4944, 4945, 4971, or 4975 with respect to any act (or failure to act) *giving rise to liability for tax* under such sections, unless no other suit has been maintained for credit or refund of, and no petition has been filed in the Tax Court with respect to a deficiency in, any other tax imposed by *such sections with respect to* such act (or failure to act).

(3) *Final determination of issues.*—For purposes of this section, any suit for the credit or refund of any tax imposed under *sections 4941, 4942, 4943, 4944, 4945, 4971,* or 4975 with respect to any act (or failure to act) giving rise to liability for tax under such sections, shall constitute a suit to determine all questions with respect to any other tax imposed with respect to such act (or failure to act) under such sections, and failure by the parties to such suit to bring any such question before the Court shall constitute a bar to such question.

(h) *Cross references.*—

(1) For provisions relating generally to claims for refund or credit see chapter 65 (relating to abatements, credit, and refund), and chapter 66 (relating to limitations).

(2) For duty of United States attorneys to defend suits, see section 507 of Title 28 of the United States Code.

(3) For jurisdiction of United States district courts, see section 1346 of Title 28 of the United States Code.

(4) For payment by the Treasury of judgments against internal revenue officers or employees, upon certificate of probable cause, see section 2006 of Title 28 of the United States Code.

26 U.S.C. § 7422

Code and that there was no statutory deficiency.

5. On March 4, 1974, a hearing was held and the Court denied the Government's motion to dismiss.

6. Subsequently, the Government filed its answer to the complaint for an injunction denying the allegations of the plaintiff and raising as an affirmative defense the jurisdiction of the Court for the reasons

> (1) the sum of
> (A) the amount shown as the tax by the taxpayer upon his return, if a return was made by the taxpayer and an amount was shown as the tax by the taxpayer thereon, plus
> (B) the amounts previously assessed (or collected without assessment) as a deficiency, over—
> (2) the amount of rebates, as defined in subsection (b)(2), made.
> 26 U.S.C. § 6211

7. See Footnote 4 above.
26 U.S.C. § 6213.

8. § 6501. *Limitations on assessment and collection*

> (a) *General rule.*—Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) or, *if the tax is payable by stamp, at any time after such tax became due and before the expiration of 3 years after the date on which any part of such tax was paid, and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period.*
> (b) *Time return deemed filed.*—
> (1) *Early return.*—For purposes of this section, a return of tax imposed by this title, except tax imposed by chapter 3, 21, or 24, filed before the last day prescribed by law or by regulations promulgated pursuant to law for the filing thereof, shall be considered as filed on such last day.
> (2) *Return of certain employment taxes and tax imposed by chapter 3.*—For purposes of this section, if a return of tax imposed by chapter 3, 21, or 24 for any period ending with or within a calendar year is filed before April 15 of the succeeding calendar year, such return shall be considered filed on April 15 of such calendar year.
> (3) *Return executed by Secretary.*—Notwithstanding the provisions of paragraph (2) of section 6020(b), the execution of a return by the Secretary or his delegate pursuant to the authority conferred by such section shall not start the running of the period of limitations on assessment and collection.

stated in the Government's previous motion to dismiss.

7. For the purpose of protecting the interests of the Government, the taxpayer was mailed a statutory notice of deficiency for the tax year 1970 pursuant to Code Section 6213 [7] on April 11, 1974. The relevant statute of limitations is Section 6501 [8] of the Code. Subsequently, the plaintiff

> (4) *Return of excise taxes.*—For purposes of this section, the filing of a return for a specified period on which an entry has been made with respect to a tax imposed under a provision of subtitle D (including a return on which an entry has been made showing no liability for such tax for such period) shall constitute the filing of a return of all amounts of such tax which, if properly paid, would be required to be reported on such return for such period.
> (c) *Exceptions.*—
> (1) *False return.*—In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time.
> (2) *Willful attempt to evade tax.*—In case of a willful attempt in any manner to defeat or evade tax imposed by this title (other than tax imposed by subtitle A or B), the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time.
> (3) *No return.*—In the case of failure to file a return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time.
> (4) *Extension by agreement.*—Where, before the expiration of the time prescribed in this section for the assessment of any tax imposed by this title, except the estate tax provided in chapter 11, both the Secretary or his delegate and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon.
> (5) *Tax resulting from changes in certain income tax or estate tax credits.*—
> For special rules applicable in cases where the adjustment of certain taxes allowed as a credit against income taxes or estate taxes results in additional tax, see section 905(c) (relating to the foreign tax credit for income tax purposes) and section 2016 (relating to taxes of foreign countries, States, etc., claimed as credit against estate taxes).

filed a petition with the Tax Court on June 7, 1974 for the purpose of determining in

(6) *Tax resulting from certain distributions or from termination as life insurance company.*—In the case of any tax imposed under section 802(a) by reason of section 802(b)(3) on account of a termination of the taxpayer as an insurance company or as a life insurance company to which section 815(d)(2)(A) applies, or on account of a distribution by the taxpayer to which section 815(d)(2)(B) applies, such tax may be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) for the taxable year for which the taxpayer ceases to be an insurance company, the second taxable year for which the taxpayer is not a life insurance company, or the taxable year in which the distribution is actually made, as the case may be.

(7) *Termination of private foundation status.*—In the case of a tax on termination of private foundation status under section 507, such tax may be assessed or a proceeding in court for the collection of such tax may be begun without assessment, at any time.

(d) *Request for prompt assessment.*—Except as otherwise provided in subsection (c), (e), or (f), in the case of any tax (other than the tax imposed by chapter 11 of subtitle B, relating to estate taxes) for which return is required in the case of a decedent, or by his estate during the period of administration, or by a corporation, the tax shall be assessed, and any proceeding in court without assessment for the collection of such tax shall be begun, within 18 months after written request therefor (filed after the return is made and filed in such manner and such form as may be prescribed by regulations of the Secretary or his delegate) by the executor, administrator, or other fiduciary representing the estate of such decedent, or by the corporation, but not after the expiration of 3 years after the return was filed. This subsection shall not apply in the case of a corporation unless—

(1)(A) such written request notifies the Secretary or his delegate that the corporation contemplates dissolution at or before the expiration of such 18-month period, (B) the dissolution is in good faith begun before the expiration of such 18-month period, and (c) the dissolution is completed;

(2)(A) such written request notifies the Secretary or his delegate that a dissolution has in good faith been begun, and (B) the dissolution is completed; or

(3) a dissolution has been completed at the time such written request is made.

(e) *Substantial omission of items.*—Except as otherwise provided in subsection (c)—

the Tax Court the taxpayer's proper liability for the year 1970.

(1) *Income taxes.*—In the case of any tax imposed by subtitle A—

(A) *General rule.*—If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 6 years after the return was filed. For purposes of this subparagraph—

(i) In the case of a trade or business, the term "gross income" means the total of the amounts received or accrued from the sale of goods or services (if such amounts are required to be shown on the return) prior to diminution by the cost of such sales or services; and

(ii) In determining the amount omitted from gross income, there shall not be taken into account any amount which is omitted from gross income stated in the return if such amount is disclosed in the return, or in a statement attached to the return, in a manner adequate to apprise the Secretary or his delegate of the nature and amount of such item.

(B) *Constructive dividends.*—If the taxpayer omits from gross income an amount properly includible therein under section 551(b) (relating to the inclusion in the gross income of United States shareholders of their distributive shares of the undistributed foreign personal holding company income), the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 6 years after the return was filed.

(2) *Estate and gift taxes.*—In the case of a return of estate tax under chapter 11 or a return of gift tax under chapter 12, if the taxpayer omits from the gross estate or from the total amount of the gifts made during the period for which the return was filed items includible in such gross estate or such total gifts, as the case may be, as exceed in amount 25 percent of the gross estate stated in the return or the total amount of gifts stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 6 years after the return was filed. In determining the items omitted from the gross estate or the total gifts, there shall not be taken into account any item which is omitted from the gross estate or from the total gifts stated in the return if such item is disclosed in the return, or in a statement attached to the return, in a manner adequate to apprise the Secretary or his delegate of the nature and amount of such item.

(3) *Excise taxes.*—In the case of a return of a tax imposed under a provision of subtitle D, if the return omits an amount of such tax properly includible thereon which exceeds 25 percent of the amount of such tax reported thereon, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 6 years after the return is filed. In determining the amount of tax omitted on a return, there shall not be taken into account any amount of tax imposed by chapter 42 or 43 which is omitted from the return if the transaction giving rise to such tax is disclosed in the return, or in a statement attached to the return, in a manner adequate to apprise the Secretary or his delegate of the existence and nature of such item.

(f) *Personal holding company tax.*—If a corporation which is a personal holding company for any taxable year fails to file with its return under chapter 1 for such year a schedule setting forth—

(1) the items of gross income and adjusted ordinary gross income, described in section 543, received by the corporation during such year, and

(2) the names and addresses of the individuals who owned, within the meaning of section 544 (relating to rules for determining stock ownership), at any time during the last half of such year more than 50 percent in value of the outstanding capital stock of the corporation,

the personal holding company tax for such year may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 6 years after the return for such year was filed.

(g) *Certain income tax returns of corporations.*—

(1) *Trust or partnerships.*—If a taxpayer determines in good faith that it is a trust or partnership and files a return as such under subtitle A, and if such taxpayer is thereafter held to be a corporation for the taxable year for which the return is filed, such return shall be deemed the return of the corporation for purposes of this section.

(2) *Exempt organizations.*—If a taxpayer determines in good faith that it is an exempt organization and files a return as such under section 6033, and if such taxpayer is thereafter held to be a taxable organization for the taxable year for which the return is filed, such return shall be deemed the return of the organization for purposes of this section.

(3) *DISC.*—If a corporation determines in good faith that it is a DISC (as defined in section 992(a)) and files a return as such under section 6011(e)(2) and if such corporation is thereafter held to be a corporation which is not a DISC for the taxable year for which the return is filed, such return shall be deemed the return of a corporation which is not a DISC for purposes of this section.

(h) *Net operating loss or capital loss carrybacks.*—In the case of a deficiency attributable to the application to the taxpayer of a net operating loss carryback or a capital loss carryback (including deficiencies which may be assessed pursuant to the provisions of section 6213(b)(2)), such deficiency may be assessed at any time before the expiration of the period within which a deficiency for the taxable year of the net operating loss or net capital loss which results in such carryback may be assessed. In the case of a deficiency attributable to the application of a net operating loss carryback, such deficiency may be assessed within 18 months after the date on which the taxpayer files in accordance with section 172(b)(3) a copy of the certification (with respect to the taxable year of the net operating loss) issued under section 317 of the Trade Expansion Act of 1962, if later than the date prescribed by the preceding sentence.

(i) *Foreign tax carrybacks.*—In the case of a deficiency attributable to the application to the taxpayer of a carryback under section 904(d) (relating to carryback and carryover of excess foreign taxes), such deficiency may be assessed at any time before the expiration of one year after the expiration of the period within which a deficiency may be assessed for the taxable year of the excess taxes described in section 904(d) which result in such carryback.

(j) *Investment credit carrybacks.*—In the case of a deficiency attributable to the application to the taxpayer of an investment credit carryback (including deficiencies which may be assessed pursuant to the provisions of section 6213(b)(2)), such deficiency may be assessed at any time before the expiration of the period within which a deficiency for the taxable year of the unused investment credit which results in such carryback may be assessed, or, with respect to any portion of an investment credit carryback from a taxable year attributable to a net operating loss carryback or a capital loss carryback from a subsequent taxable year, at any time before the expiration of the period within which a deficiency for such subsequent taxable year may be assessed.

(k) *Reductions of policyholders surplus account of life insurance companies.*—In the case of a deficiency attributable to the application to the taxpayer of section 815(d)(5) (relating to reductions of policyholders surplus account of life insurance companies for certain unused deductions), such deficiency may be assessed at any time before the expiration of the period within which a deficiency for the last taxable year to which the loss described in section 815(d)(5)(A) is carried under section 812(b)(2) may be assessed.

(*l*) *Joint income return after separate return.*—

*Findings of Fact*

8. Plaintiff is an alien who has not been lawfully admitted to the United States as a permanent resident.

9. In 1964 plaintiff illegally entered the United States, was apprehended by the Immigration and Naturalization Service and was granted voluntary departure from the United States.

10. Subsequently, the plaintiff returned to the United States after being in Mexico for only two days, and after staying a year and a half in the United States, plaintiff was again deported.

11. After being deported a second time, plaintiff returned to the United States using the false name of Felipe Renteria and a false social security number.

12. The plaintiff used the false name and social security number because he thought it would be easier for the plaintiff to stay in the United States.

13. On February 2, 1967, the plaintiff was again deported by the Immigration and Naturalization Service.

14. For purposes of obtaining an immigrant visa, plaintiff applied for a visa from the American Embassy in Mexico in early 1971.

15. As a requirement for obtaining an immigrant visa, the visa applicant must present evidence of support to show that the applicant will not become a public charge under Section 212(a)(15) Act of 1952. Title 8, United States Code, Section 1182(a)(15).[9]

---

For a period of limitations for assessment and collection in the case of a joint income return filed after separate returns have been filed, see section 6013(b)(3) and (4).

(m) *Tentative carryback adjustment assessment period.*—In a case where an amount has been applied, credited, or refunded under section 6411 (relating to tentative carryback adjustments) by reason of a net operating loss carryback, a capital loss carryback, an investment credit carryback, or a work incentive program carryback to a prior taxable year, the period described in subsection (a) of this section for assessing a deficiency for such prior taxable year shall be extended to include the period described in subsection (h), (j), or (o), whichever is applicable; except that the amount which may be assessed solely by reason of this subsection shall not exceed the amount so applied, credited, or refunded under section 6411, reduced by any amount which may be assessed solely by reason of subsection (h), (j), or (o), as the case may be.

(n) *Special rule for chapter 42 taxes.*—

(1) *In general.*—For purposes of any tax imposed by chapter 42 (other than section 4940), the return referred to in this section shall be the return filed by the private foundation for the year in which the act (or failure to act) giving rise to liability for such tax occurred. For purposes of section 4940, such return is the return filed by the private foundation for the taxable year for which the tax is imposed.

(2) *Certain contributions to section 501(c)(3) organizations.*—In the case of a deficiency of tax of a private foundation making a contribution in the manner provided in section 4942(g)(3) (relating to certain contributions to section 501(c)(3) organizations) at-

tributable to the failure of a section 501(c)(3) organization to make the distribution prescribed by section 4942(g)(3), such deficiency may be assessed at any time before the expiration of one year after the expiration of the period within which a deficiency may be assessed for the taxable year with respect to which the contribution was made.

(*o*) *Work incentive program credit carrybacks.*—In the case of a deficiency attributable to the application to the taxpayer of a work incentive program credit carryback (including deficiencies which may be assessed pursuant to the provisions of section 6213(b)(2)), such deficiency may be assessed at any time before the expiration of the period within which a deficiency for the taxable year of the unused work incentive program credit which results in such carryback may be assessed, or, with respect to any portion of a work incentive program credit carryback from a taxable year attributable to a net operating loss carryback or a capital loss carryback from a subsequent taxable year, at any time before the expiration of the period within which a deficiency for such subsequent taxable year may be assessed.

26 U.S.C. § 6501.

9. § 1182. *Excludable aliens—General classes*

(a) Except as otherwise provided in this chapter, the following classes of aliens shall be ineligible to receive visas and shall be excluded from admission into the United States:

(15) Aliens who, in the opinion of the consular officer at the time of application for a visa, or in the opinion of the Attorney General at the time of application for admission, are likely at any time to become public charges;

8 U.S.C. § 1182(a)(15)

16. As evidence of his ability to support himself in the United States, plaintiff submitted to the Embassy Vice Consul's office copies of his U.S. Individual Income Tax Returns (Forms 1040) for the years 1968, 1969 and 1970.

17. Upon examination of the plaintiff's tax returns for the years 1968, 1969, and 1970, plaintiff was referred by the Vice Consul's office to the office of the Internal Revenue Service in Mexico City.

18. The plaintiff's 1968 U.S. Individual Income Tax Return (Form 1040) reflects that the plaintiff claimed exemptions for four sisters and one brother in addition to exemptions for his wife and himself, that the plaintiff provided 100% support for the brother and four sisters in 1968 and that the brother and four sisters resided in Mexico. The designated filing status was "married filing joint" and the return was signed by plaintiff and his wife, Olga Madrigal. The 1968 return reflects total earnings of $6,065.17.

19. The plaintiff's 1969 U.S. Individual Income Tax Return (Form 1040) reflects the plaintiff claimed exemptions for his mother, a brother and three sisters, that the plaintiff provided 100% support for the mother, brother and three sisters in 1969, that the mother and one sister resided in Mexico while the brother and two sisters resided at the plaintiff's address in Los Angeles. The designated filing status was "married filing joint" and the return was signed by plaintiff and his wife, Olga Madrigal. The 1969 return reflects gross income of $7,303.99.

20. The 1970 U.S. Individual Income Tax Return (Form 1040) reflects that the plaintiff claimed nine exemptions consisting of the plaintiff, his wife, a child, five sisters and the plaintiff's mother. The return for 1970 further reflects that the plaintiff indicated on the return that the five sisters and mother all resided in Mexico and that plaintiff provided 100% support for the five sisters and mother during 1970. The designated filing status was "married filing joint" and the return was signed by plaintiff and his wife, Olga Madrigal. The 1970 return reflects gross income of $8,971.92.

21. The Court finds and concludes that for each of the years 1968, 1969 and 1970, there was sufficient reason for the tax returns to be referred to the Internal Revenue Service by the Vice Consul because the face of the returns raised significant questions regarding plaintiff's financial responsibility and plaintiff's ability to support himself and provide 100% of the support for the dependents claimed on the 1968, 1969 and 1970 returns.

22. After the plaintiff was referred to the Internal Revenue Service by the Vice Consul's office, the plaintiff was interviewed on July 13, 1971 by Mrs. Eva Corral, a program aide for the Internal Revenue Service at the American Embassy in Mexico City.

23. On July 13, 1971, the program aide prepared three amended U.S. Nonresident Alien Income Tax Returns Forms (1040NR) for the years 1968, 1969 and 1970 in the presence of the plaintiff and on July 13, 1971, the plaintiff signed the returns for 1968, 1969 and 1970.

24. With respect to each amended return, signed by the plaintiff on July 13, 1971, the plaintiff also signed Withdrawal Statements withdrawing his exemptions claimed for his mother, brother and sisters for the years 1968, 1969 and 1970. The Withdrawal Statement is a part of Form 2038, Information to Support Exemption Claimed for Dependent on Federal Income Tax Return. A Form 2038 was signed by the plaintiff for each exemption claimed for the years 1968, 1969 and 1970 other than the exemptions claimed for his wife and child.

25. The amended returns signed by the plaintiff on July 13, 1971 reflected additional income tax as follows:

| | |
|---|---|
| 1968 | $ 953.15 |
| 1969 | 914.86 |
| 1970 | 1,154.03 |

26. In addition to signing the amended nonresident tax returns and the related Withdrawal Statements described above, the plaintiff also signed on August 1, 1973, a Payment Agreement (Form 433–D) wherein the plaintiff stated "that because of my financial condition, as evidenced by my previously submitted financial statement, I am unable at this time to pay the internal revenue taxes I owe in the amount shown below." The Payment Agreement which was also signed by a delegate of the Internal Revenue Service, further reflects taxes owed in the amount of $3,417.25 for the years 1968, 1969 and 1970 and also the plaintiff's request to pay the taxes in monthly payments of $100.00 per month.

27. It has not been alleged and the evidence produced by the plaintiff does not show that plaintiff objected in any manner to the presently contested tax liabilities when the plaintiff signed the Payment Agreement on August 1, 1973.

28. Having considered the testimony of the plaintiff and the testimony of the program aide, Eva Corral, the Court finds that the plaintiff voluntarily chose to sign the amended returns as a step in showing his financial responsibility under the immigration laws of the United States. The evidence presented does not support the plaintiff's contention that he signed the amended U.S. Nonresident Alien Income Tax Returns (Forms 1040NR) for the years 1968, 1969 and 1970 under any threat of force, ruse, coercion or intimidation.

29. The plaintiff has not filed claim for refund described in Section 7422 [10] of the Internal Revenue Code of 1954 for the years 1968, 1969 and 1970, nor has the plaintiff paid the additional tax reflected on the amended returns and assessed against the plaintiff in the amounts of $953.15, $914.86 and $1,154.03 for the years 1968, 1969 and 1970.

30. Any conclusion of law deemed as or properly constituting a finding of fact is hereby adopted as a finding of fact.

### Conclusions of Law

1. The gravamen of plaintiff's complaint is that the increase in taxes shown on the amended U.S. Nonresident Alien Income Tax Returns signed by plaintiff on July 13, 1971 over the U.S. Individual Income Tax Returns originally filed by the plaintiff for the years 1968, 1969 and 1970 constitutes a determination of a deficiency by the Internal Revenue Service under Section 6211(a) [11] of the Internal Revenue Code of 1954 for the reason that the plaintiff did not voluntarily sign the amended tax returns and therefore plaintiff contends there was no voluntary self assessment of tax as when an individual files his annual income tax return. Accordingly, plaintiff contends that a notice of deficiency defined by Section 6212(a) [12] of the Code should have been mailed to the plaintiff and the collection of the increase in tax may be enjoined because of the exception noted by Section 7421(a) [13] of the Code, and the specific exceptions provided in Sections 6212(a),[14] 6213(a) [15] and Section 7426(a) and (b)(1).[16]

10. See Footnote 2 above
26 U.S.C. § 7422

11. See Footnote 6 above
26 U.S.C. § 6211

12. § 6212. *Notice of deficiency*
(a) *In general.*—If the Secretary or his delegate determines that there is a deficiency in respect of any tax imposed by subtitle A or B or chapter 42 or 43, he is authorized to send notice of such deficiency to the taxpayer by *certified mail or registered mail.*
26 U.S.C. § 6212(a)

13. See Footnote 1 above

26 U.S.C. § 7421

14. See Footnote 12 above
26 U.S.C. § 6212(a)

15. See Footnote 4 above
26 U.S.C. § 6213

16. § 7426. *Civil actions by persons other than taxpayers*
(a) *Actions permitted.*—
(1) *Wrongful levy.*—If a levy has been made on property or property has been sold pursuant to a levy, *any person* (other than the person against whom is assessed the tax

2. Section 6211[17] of the Internal Revenue Code and related case law support the distinction between a voluntary self-imposed determination of tax and the fact that an involuntary addition to tax gives rise to a deficiency and the required access to the Tax Court by virtue of the notice of deficiency. For example in *Lyddon & Company v. United States*, 158 F.Supp. 951, 141 Ct.Cl. 545 (1958) the Court stated at 953:

"When one files a tax return showing taxes due, he has, presumably, assessed himself and is content to become liable for tax, and to pay either when it is due according to the statute, or when he can get the money together. At any rate he shows no desire to resort to the Tax Court to contest the assessment. The Commissioner has no occasion to determine a deficiency and give the taxpayer notice of it, since at that stage, and until an audit shows something different, the taxpayer's own computation of his taxes may be taken as correct. The only notice which will be sent to the taxpayer will be a notice that the taxes shown to be due by his return should be paid immediately, with appropriate interest."

In questioning whether taxes reflected on the return constituted a statutory deficiency, the Court stated that a deficiency is ordinarily a shortage arising out of circumstances not disclosed in the return. See also *General Outdoor Advertising Co. v. United States*, 169 F.Supp. 947 at 950–951, 145 Ct.Cl. 127 (1959).

3. Additional support is found in the language of Section 6212 authorizing the notice of deficiency only where "the Secretary or his delegate determines that there is a deficiency . . ." In the present case, having concluded there was no duress or coercion and that the plaintiff signed the amended returns voluntarily, clearly, it was the voluntary act of the plaintiff, not a determination by the Internal Revenue Service, which resulted in the additional tax liabilities.

4. In the alternative, assume *arguendo* that the voluntary self assessment of taxes shown on the amended U.S. Nonresident Alien Income Tax Returns (Forms 1040NR) for 1968, 1969 and 1970 constitutes Section 6211[18] deficiency to the extent the tax liability is greater than the tax liabilities reflected on the original U.S. Individual Income Tax Returns (Forms 1040) filed earlier by the plaintiff. Even if the increase in the tax liabilities does constitute a Section 6211[19] deficiency, the plaintiff has waived his right to a Section 6212[20] notice of defi-

out of which such levy arose) *who claims an interest in or lien on such property* and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States. Such action may be brought without regard to whether such property has been surrendered to or sold by the Secretary or his delegate.

(2) *Surplus proceeds.*—If property has been sold pursuant to a levy, any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property junior to that of the United States and to be legally entitled to the surplus proceeds of such sale may bring a civil action against the United States in a district court of the United States.

(3) *Substituted sale proceeds.*—If property has been sold pursuant to an agreement described in section 6325(b)(3) (relating to substitution of proceeds of sale), any person who claims to be legally entitled to all or any part of the amount held as a fund pursuant to

such agreement may bring a civil action against the United States in a district court of the United States.

(b) *Adjudication.*—The district court shall have jurisdiction to grant only such of the following forms of relief as may be appropriate in the circumstances:

(1) *Injunction.*—If a levy or sale would irreparably injure rights in property which the court determines to be superior to rights of the United States in such property, the court may grant an injunction to prohibit the enforcement of such levy or to prohibit such sale.

26 U.S.C. § 7426(a), (b)(1)

17. See Footnote 6 above
   26 U.S.C. § 6211

18. See Footnote 6 above
   26 U.S.C. § 6211

19. See Footnote 6 above
   26 U.S.C. § 6211

20. See Footnote 12 above
   26 U.S.C. § 6212

ciency because the facts show the plaintiff did not contest the increase in tax at the time he signed the Forms 1040NR on July 13, 1971; nor did the plaintiff contest the increase at the time he signed the Payment Agreement (Form 433–D) on August 1, 1973. See *General Outdoor Advertising Co. Inc. v. United States*, 169 F.Supp. 947 at 950, 145 Ct.Cl. 127 (1959).

5. For the reasons stated above, the case falls outside of the statutory exceptions stated in Section 7421 [21] of the Code. Accordingly, the case must be examined in light of the limited circumstances when an injunction may nonetheless be granted under the principles of *Enochs v. Williams Packing and Navigation Company*, 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962) more recently reaffirmed in *Bob Jones University v. Simon*, 416 U.S. 725, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974) and *Commissioner of Internal Revenue v. "Americans United" Inc.*, 416 U.S. 752, 94 S.Ct. 2053, 40 L.Ed.2d 518 (1974); *Thrower v. Miller*, 440 F.2d 1186 (C.A. 9, 1971).

6. Under *Enochs v. Williams Packing and Navigation Company, supra.*, the collection of taxes may not be enjoined unless the taxpayer meets a two pronged test showing that (1) it is "clear that under no circumstances could the Government ultimately prevail" and that (2) "equity jurisdiction otherwise exists" because of the threat of irreparable injury for which there is no adequate legal remedy.

7. The taxpayer did not sign the amended tax returns and the related Exemption Withdrawal Statements under unlawful duress and no evidence was produced by the plaintiff showing that the subsequent Payment Agreement was signed under duress. Accordingly, there is no reason to believe that "under no circumstances could the Government ultimately prevail."

8. similarly, since the taxpayer need only institute a refund suit under Section 7422 [22] of the Internal Revenue Code, the plaintiff is not without an adequate

remedy at law. Accordingly, there is no irreparable injury. *Bob Jones University v. Simon, supra*, 416 U.S. pp. 746–748, 94 S.Ct. 2038.

9. As recently noted by the Supreme Court in *Commissioner of Internal Revenue v. Shapiro*, 424 U.S. 614, 96 S.Ct. 1062, 47 L.Ed.2d 278, 44 U.S.L.W. 4313 (1976):

". . . the Government's interest in collecting the revenues is an important one, *Fuentes v. Shevin*, 407 U.S. 67, 92 [92 S.Ct. 1983, 2000, 32 L.Ed.2d 556, 557] (1972). This interest is clearly sufficient to justify seizure of a taxpayer's assets without a pre-seizure hearing, *Fuentes v. Shevin, supra*, and to remove any need to subject the Commissioner to the burden of an inquiry into the basis for his assessment absent factual allegations of irreparable injury by the taxpayer."

10. The language of *Phillips v. Commissioner of Internal Revenue*, 283 U.S. 589, at 595, 596, 51 S.Ct. 608 at 611, 75 L.Ed. 1289, clearly states that constitutional due process requirements are met if there is an opportunity for the ultimate judicial determination of the tax liability:

". . . Where, as here, adequate opportunity is afforded for a later judicial determination of the legal rights, summary proceedings to secure prompt performance of pecuniary obligations to the government have been consistently sustained. * * * Where only property rights are involved, mere postponement of the judicial enquiry is not a denial of due process, if the opportunity given for the ultimate judicial determination of the liability is adequate."

11. Based upon the facts and law stated above, plaintiff must seek a judicial determination of his liabilities in a properly instituted suit for refund and he may not seek a premature adjudication in the present injunctive suit.

12. Any finding of fact deemed as or properly constituting a conclusion of law is hereby adopted as a conclusion of law.

---

**21.** See Footnote 1 above
26 U.S.C. § 7421

**22.** See Footnote 2 above
26 U.S.C. § 7422

## ORDER

LET JUDGMENT BE ENTERED AC-CORDINGLY.