HUMAN ENGINEERING INSTITUTE,
Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent-Appellee.

Joseph S. KOPAS and Mary E. Kopas,
Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent-Appellee.

No. 79–1123.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 29, 1980.

Decided Aug. 6, 1980.

Joseph S. Kopas, Cleveland, Ohio, for petitioners-appellants.

M. Carr Ferguson, Gilbert Andrews, Asst. Atty. Gen., Gary R. Allen, Mary Jennings, James F. Miller, Tax Div., U. S. Dept. of Justice, Stuart E. Seigel, Chief Counsel, I. R. S., Washington, D. C., for respondent-appellee.

Before MERRITT and JONES, Circuit Judges, and WISEMAN, District Judge.*

WISEMAN, District Judge.

Taxpayers, representing Human Engineering Institute [HEI] and themselves individually, appeal the decision of the United States Tax Court, which substantially upheld the assessment by the Commissioner of the Internal Revenue Service [IRS] of income tax deficiencies and penalties. The

* Honorable Thomas A. Wiseman, Jr., District Judge, United States District Court for the Middle District of Tennessee, sitting by designation.

taxpayers also appeal the denial by the Tax Court of their motion for posttrial oral argument. To describe the history of these consolidated cases as "long and tortuous"[1] is almost an understatement at this point. The Commissioner began the audit of the individual taxpayers' returns for the years 1958–1960 in 1961. Since then, the span of time was enlarged to include the taxpayers' returns from 1953 through 1962, and the audit was expanded to encompass the tax liability of HEI, a corporation founded and managed by the individual taxpayers.[2]

In 1967, as a result of the IRS audit, the taxpayers were indicted for tax evasion for the years 1960 through 1962. Joseph Kopas later entered a plea of guilty to one count of filing a fraudulent income tax return for 1961, and was fined. Also in 1967, jeopardy assessments were made pursuant to 26 U.S.C. § 6861(a) and much of the taxpayers' assets thereby seized or frozen.[3] Almost contemporaneously, the Commissioner ret-roactively revoked the previously granted tax exemption status for HEI. Shortly thereafter, in accordance with 26 U.S.C. § 6861(b), the IRS issued a statutory notice of deficiency to both the corporate and individual taxpayers. The taxpayers duly filed petitions in the United States Tax Court for redetermination of the deficiencies assessed.

Over the next eight years the Tax Court dealt with pretrial matters, focusing to a large degree on the taxpayers' challenge to the constitutionality and propriety of the jeopardy assessment. On four occasions the taxpayers have unsuccessfully sought relief from this Court.[4] After what appears to have been interminable delays, due largely to the efforts of taxpayers' counsel and later, when the taxpayers were unrepresented by counsel, to the desire on the part of the Tax Court to give the taxpayers every conceivable opportunity to present their case effectively,[5] Tax Court Judge

1. This was the description given by United States Tax Court Judge Tannenwald in his final opinion in this case. *Human Engineering Institute v. Commissioner*, 37 T.C.M. (CCH) 619 (Ap. 13, 1978).

2. HEI was incorporated in 1962 by Dr. Joseph Kopas. The purpose of the corporation, originally established as not for profit, was to provide vocational training programs for businesses. During the years in issue, Dr. Kopas was the controlling officer and Mrs. Kopas was responsible for the bookkeeping and accounting.

3. Section 6861 of Title 26 gives the IRS authority to assess a deficiency immediately if it "will be jeopardized by delay." After such assessment, notice and demand for payment is to be made. A bond in the amount equal to all or part of the deficiency indicated in the jeopardy assessment may be filed. 26 U.S.C. § 6863. Upon the filing of such bond, the collection of the amount covered under the bond will be stayed. Absent posting of a bond, the IRS is authorized to levy upon the taxpayer's property if the taxpayer has neglected or refused to pay deficiencies due upon demand. 26 U.S.C. § 6331.

4. In *Kopas v. United States*, 32 A.F.T.R.2d 73-5111 (N.D.Ohio 1973), the court dismissed the taxpayers' suit for injunctive relief to declare the jeopardy assessments illegal. This Court affirmed in 492 F.2d 1243 (6th Cir.), *cert. denied*, 419 U.S. 857, 95 S.Ct. 104, 42 L.Ed.2d 91, *rehearing denied*, 419 U.S. 1041, 95 S.Ct. 530, 42 L.Ed.2d 319 (1974). Similarly, in *Human Engineering Institute v. Commissioner*, 61 T.C. 61 (1973), the United States Tax Court refused to release assets from the jeopardy assessments and upheld the assessments. This Court dismissed the appeal because of the taxpayers' failure to pay the docketing fee, *Kopas v. Commissioner*, No. 74–8033 (6th Cir. Ap. 1, 1975), and the United States Supreme Court denied certiorari in 423 U.S. 860, 96 S.Ct. 116, 46 L.Ed.2d 88 (1975). Before taxpayers appealed that case, they filed a writ of mandamus in this Court to order the Tax Court to reconsider its decision. The writ was denied by this Court in late 1973. *Kopas v. United States Tax Court*, No. 73–2148 (6th Cir. Dec. 21, 1973), *rehearing denied*, January 29, 1974, *cert. denied*, 419 U.S. 857, 95 S.Ct. 104, 42 L.Ed.2d 91 (1974). Finally, this Court upheld the decision of the United States District Court for the Northern District of Ohio, which had granted defendants' motion for summary judgment in a suit in which the taxpayers had asked that all liens be removed and all assets returned and for compensatory and punitive damages against individual IRS agents. *Human Engineering Institute v. Abbott*, 611 F.2d 372 (6th Cir. 1979).

5. Because this case has been in the judicial system for over twelve years, it is appropriate to explain the reasons for the delay in final resolution. The delay seems even longer because although the IRS began its audit of HEI in 1961, it did not take any official action until six years later. Presumably this delay was attributable to the fact that the audit was expanded to include the individual taxpayers and to encompass seven additional years.

Tannenwald assigned the case for trial in front of Special Trial Judge Falk. The two-day trial was held in June of 1976. Thereafter, on December 23, 1977, Judge Falk filed his findings of fact and opinion, in which he held that, on the basis of the evidence presented, the Commissioner was, with one exception, correct in his assessment of taxes due and fraud penalties. He did, however, disallow fraud liability for the year 1953. After allowing for objections from both parties, Judge Tannenwald, on April 13, 1978, adopted the findings of fact of Judge Falk and issued a memorandum opinion incorporating his opinion, in which he had upheld tax deficiencies and penalties of $3,666,121 plus interest.

After the issuance of Judge Falk's findings, the taxpayers filed objections and a request for oral argument pursuant to the local Tax Court Rule 182(d). Before rendering the final opinion in this case, Judge Tannenwald denied the taxpayers' motion for oral argument.

█ Local Rule 182(d) provides as follows:

> *Oral Argument and Decision* : The Division to which the case is assigned *may, upon motion of any party or on its own motion, direct oral argument.* The Divi-

sion inter alia may adopt the Special Trial Judge's report or may modify it or may reject it in whole or in part, or may receive further evidence, or may recommit it with instructions. Due regard shall be given to the circumstance that the Special Trial Judge had the opportunity to evaluate the credibility of witnesses; and the findings of fact recommended by the Special Trial Judge shall be presumed to be correct.

(Emphasis added.) Without considering the applicability of a local court rule as a tool to be used by one party rather than solely by the court, it is clear that the above provision is permissive in that it *allows* the court to direct oral argument. The rule cannot be construed to mandate such a hearing upon motion by a party. It is obviously completely within the discretion of the judge to determine whether or not oral argument would be appropriate or helpful.

In denying the taxpayers' motion for oral argument, Judge Tannenwald explained that "such oral argument would add no elements to the case but would simply be a vehicle for renewing arguments which have already been made repeatedly and at length." The Special Trial Judge gave the taxpayers every consideration and offered

Once the case entered the courts in 1968, an initial delay of almost two years can be traced to the taxpayers' failure to respond to eight separate orders from the Tax Court for trial status reports and to the withdrawal of taxpayers' first counsel. Later delay was caused not only by the withdrawal of the taxpayers' subsequently retained attorneys but also by efforts to compromise the case and pretrial matters raised by the taxpayers.

In June of 1971, the government reported to the Tax Court that an offer in compromise was pending. The court, therefore, continued the case. Shortly thereafter, the IRS rejected the offer but the taxpayers asked that the offer be referred to the appellate division of the IRS for review. While that review was pending, the court again continued the case. In the meantime, the taxpayers withdrew their offer.

After receiving a trial status report from both parties and a pretrial motion filed by the taxpayers that basically asked the court to declare the jeopardy assessments invalid, the court heard oral argument in October of 1972. In early 1973, the court denied the taxpayers' motion and soon afterwards set the case for trial

in September of 1973. Rather than proceeding with the trial, however, the court allowed the taxpayers a second hearing in which they could present evidence on their challenge and objections to the jeopardy assessments. The court thereafter denied the taxpayers' motion to set aside the jeopardy assessments. Because of the pending appeal to this Court from that decision and the filing of taxpayers' petition to this Court for writ of mandamus against the Tax Court, the Tax Court continued all proceedings in the case until resolution by this Court. Once this Court denied the writ of mandamus and dismissed the appeal, the Tax Court in July of 1975 held a hearing pursuant to the government's motion to show cause why the taxpayers should not be ordered to stipulate evidence, *see* text accompanying note 8 *supra*, and then allowed taxpayers further opportunity to examine the government documents and submit objections. The taxpayers did file objections and, with some exceptions, the Court ordered the government's proposed facts and evidence stipulated. Thereafter, the case was assigned to a special trial judge and a hearing was held in June of 1976.

them ample opportunity to present arguments and offer evidence at the hearing. In their motion for oral argument, the taxpayers listed no reasons for such argument nor did they suggest that further oral argument would aid the court in any way. The taxpayers' contention that Judge Tannenwald was in error in denying their motion for oral argument is, therefore, without merit.

■ The taxpayers secondly assert that Judge Falk erred by refusing to take into account expenditures incurred by HEI.[6] The taxpayers contend that the IRS audit should have reflected deficits for the years in question rather than showing taxable income far in excess of the reported taxable income. Although the burden of proof is on the government to show fraud, see 26 U.S.C. § 7454(a); *Foster v. Commissioner*, 487 F.2d 902 (6th Cir. 1973) (per curiam), the burden of proving that the deficiencies determined by the IRS are incorrect is on the taxpayers.[7] *See Welch v. Helvering*, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212 (1933); *Biggs v. Commissioner*, 440 F.2d 1 (6th Cir. 1971). The record in this case unequivocally supports the finding of the Tax Court

that the taxpayers did not meet their burden. The Tax Court offered the taxpayers every opportunity to present any evidence to contest the Commissioner's determination, both before and during the hearing in this case.

■ By the time the hearing was held, the taxpayers were acting pro se. They had previously been represented by three different sets of counsel, all of whom had withdrawn from the case. The taxpayers indicated that they could no longer afford to retain counsel. The Tax Court was sensitive to the fact that the taxpayers were without counsel, especially in light of the complexity of the case, and attempted to assist the taxpayers in understanding the legal procedures and in presenting their case in an orderly manner. For three weeks prior to the hearing, the court provided the taxpayers the assistance of a court clerk to mark approximately 4300 exhibits that the taxpayers desired to introduce into evidence.

In an effort to facilitate the introduction of evidence and in accordance with Rule 31 of the Tax Court Rules of Practice following 26 U.S.C. § 7453,[8] the government had,

---

**6.** On appeal, the taxpayers claim that the Tax Court committed error in four ways: (1) by "omit[ting] the proper and necessary expenditures" HEI incurred and thus converting a deficit into net taxable income; (2) by denying the taxpayers' motion for posttrial oral argument; (3) by denying the taxpayers a fair and meaningful hearing; and (4) by "shirk[ing] and abus[ing]" its duty by not giving the taxpayers a fair and meaningful hearing when a posttrial *oral argument would have resulted in a fair* redetermination. Since the fourth claim is essentially incorporated into the second and third grounds, we have not addressed it separately in this opinion. The first and third contentions will be treated together in the remainder of the discussion.

**7.** The Commissioner may impose a penalty of fifty percent of any underpayment if any part of such underpayment is due to fraud. 26 U.S.C. § 6653(b). Although retroactive assessments must ordinarily be made within three years after the tax return is filed, 26 U.S.C. § 6501(a), this statute of limitation does not apply if there has been fraud with intent to evade the tax. 26 U.S.C. § 6501(c).

**8.** The pertinent parts of Rule 31 provided as follows:

(b) Stipulations—(1) Stipulations required. The Court expects the parties to stipulate evidence to the fullest extent to which complete or qualified agreement can be reached including all material facts that are not or fairly should not be in dispute.
(2) In preparation for trial. The party expecting to introduce any evidence which might possibly be stipulated . . . shall confer with his adversary . . . and both shall endeavor to stipulate all facts not already stipulated.

. . . . .

(d) Results of noncompliance by a party. (i) If at the date of issuance of trial notice in a case a party has failed to confer with his adversary, or has refused or failed to stipulate the facts and evidence which are not in dispute or fairly should not be in dispute . . . the party proposing to stipulate may . . . file with the Court a motion for an order to show cause why the facts and evidence covered in his motion should not be accepted as established for the purposes of the case.
In 1980, the Tax Court Rules of Practice were amended. The essence of former Rule 31 is incorporated in the current Rule 90.

prior to the hearing, attempted to stipulate evidence that it wished to introduce. Having little success in this endeavor through informal means with the taxpayers, the government moved that they show cause why they should not be ordered to stipulate to the documents. A hearing on the show cause motion was held in Washington, D. C., on June 25, 1975. The taxpayers had informed the court that they could not and would not be present at the hearing because they could not afford to travel from their home in Cleveland. Rather than ordering the evidence stipulated, the Tax Court gave the taxpayers further opportunity to inspect the documents and submit objections thereto before a determination by the court.

These incidents are only two examples of the Tax Court's sensitivity to, if not solicitude toward, the taxpayers during pretrial procedures. The attitude of the Tax Court judges was commendable throughout the proceedings for the patience shown in light of the taxpayers' continual reminders that they were unrepresented by counsel and unknowledgeable about the proceedings, their frequent unwillingness to follow the court's suggestions, and their repeated reiterations of the unfairness of the jeopardy assessments, an issue upon which the taxpayers had previously appealed and that was therefore settled and no longer relevant. The Tax Court attempted to walk a fine line between acting as counsel for the taxpayers and treating the taxpayers as attorneys. Despite their lack of legal representation, both taxpayers are well-educated. Dr. Kopas has a bachelor's degree in electrical engineering, a master's degree in vocational guidance and testing, a Ph.D in education, and is a former college professor. Mrs. Kopas has a bachelor's degree in business administration with heavy emphasis in accounting. It cannot be said that the taxpayers lacked the mental acumen to understand the nature of the proceedings or the organizational abilities to present their case in an orderly and convincing manner.

On appeal, Mrs. Kopas argued the case for both herself, her husband, and the corporation. To bolster her contention that they had been treated summarily and un-

fairly by the Tax Court, she argued that they had myriad exhibits that, had they been introduced into evidence, would have proven that the Commissioner's determination of deficiencies was incorrect. Mrs. Kopas indicated that the taxpayers were prepared to introduce these exhibits but were not allowed to do so by the Tax Court Judge. This interpretation of the proceedings is extremely slanted. A few examples of the interchanges that took place during the trial will illustrate not only the flavor of the hearing but also the care the judge took to provide the taxpayers ample opportunity to present their case.

After the close of the government's case, Dr. Kopas took the stand. The court initially allowed him to be seated at counsel's table next to his wife until Mrs. Kopas persisted in coaching him, at which point the court insisted that he actually take the witness stand. The beginning of Dr. Kopas' testimony was as follows:

THE WITNESS: Shall I proceed?

THE COURT: Please.

THE WITNESS: The evidence to support my statements or my conclusion is in the boxes in the—over in the corner.

THE COURT: Well, do you want them more closely available to you so that you can introduce them as they become relevant?

THE WITNESS: That's going to take an awful long time, Your Honor.

THE COURT: I have all summer.

THE WITNESS: Okay. So, I'd like to introduce them in total as evidence, and then—

THE COURT: The Court will not accept a bunch—

THE WITNESS: Oh, I see.

THE COURT: —of records like that, dumped on it without any rhyme or reason to what it's receiving. I will receive the documents one by one, as relevant, and provided they're not duplicated in the stipulation. So, you go ahead from the beginning to the end, and as each docu-

ment becomes relevant, offer it, and we will see whether it's admitted in evidence.

TR at 87, Vol. VI.

Despite the Court's explanation about the proper manner by which the taxpayers should introduce their evidence, an almost identical colloquy occurred later:

THE COURT: Is there any further testimony you want to give?

THE WITNESS: I want—what I want is all the evidence that we've put in on this to be accepted in this Court as evidence.

THE COURT: What evidence?

THE WITNESS: That's in those boxes.

THE COURT: You're not going to dump 5,000 pieces of paper on the Court and call it evidence. It isn't evidence. It's a pile of papers. As each document becomes relevant, introduce it. That's what we've been doing and we've got three in already.

THE WITNESS: All right, then, we'll have to go right on down the line here and induce (sic) it for every item. Is that it?

THE COURT: I'd like to know how every item is relevant, and get them all in, yes, that's what I want to do.

TR at 172–73, Vol. VI.

Throughout the hearing, the trial judge patiently, and at times repeatedly, explained to the taxpayers not only the procedure by which they could introduce exhibits, but also their respective roles as attorneys and taxpayers-petitioners, the difference between proffering and introducing exhibits, the meaning of evidence and stipulated facts, and other procedures and legal technicalities of which the taxpayers were unaware or exhibited less than a complete understanding. At times the judge cautioned the taxpayers against proceeding in a manner that would be especially prejudicial to their position.

The tone of the hearing and the judge's attitude in dealing with the frustration of the situation is reflected in the following excerpts from the testimony. After the government counsel objected to the introduction of a document proffered by the taxpayers and asked Dr. Kopas if he received payment by check or cash for coins that he sold, the hearing proceeded as follows:

A [DR. KOPAS]. It's none of your damn business.

THE COURT: Now,—

THE WITNESS [DR. KOPAS]: I'm tired of this. I can't stand this sort of thing.

THE COURT: —Dr. Kopas,—Dr. Kopas. Do you want to take a recess to compose yourself?

THE WITNESS [DR. KOPAS]: No. I want Mary [Mrs. Kopas] to take the stand.

THE COURT: Dr. Kopas, you're on the witness stand.

MRS. KOPAS: You're still on the stand until he excuses you, Joe.

THE WITNESS: Well, I'm not going through this harassment.

THE COURT: Do you want a recess to compose yourself?

THE WITNESS: What?

THE COURT: Do you want a recess to compose yourself?

MRS. KOPAS: I don't see how he—

THE COURT: I'm not asking you anything, Mrs. Kopas.

THE WITNESS: I—what—

THE COURT: Dr. Kopas,—

THE WITNESS: It won't do any—

THE COURT: —the only place I'll hear anything from you is the witness stand.

MRS. KOPAS: All right. All right, Joe. Just be quiet please.

THE COURT: I'll hear from you from the witness stand.

THE WITNESS: Beg pardon?

THE COURT: I'll hear from you from the witness stand.

MRS. KOPAS: Be quiet. Be quiet. Sit down. Go on out and get a drink of water.

THE COURT: All right. Now, will the Reporter go back to who prepared this? I want to hear that testimony as to who prepared the document.

TR at 274–75, Vol. VI.

The hearing thereupon proceeded in a more collected fashion. Shortly thereafter,

however, the hearing began to deteriorate again, and confusion and frustration appeared to control. Mrs. Kopas engaged in a monologue, claiming that the taxpayers did not have sufficient time to review the objections submitted by the government to their pretrial motions in which they contested the jeopardy assessment [9] and that they should be allowed to introduce carte blanche all documents without prior rulings by the court as to their admissibility. The following colloquy between Mrs. Kopas and the court concluded the day and one-half hearing:

> MRS. KOPAS: I am going to leave. I am not taking this. I didn't sleep last night and I'm not going to go on through this thing for six months. Furthermore, I want everyone (sic) of our evidence to go in. He [counsel for the government] saw them. He knows what they are. He is just taking what he wants. And that is not the way—
>
> THE COURT: He knows what they are and he has what appear to be legitimate—
>
> MRS. KOPAS: Yes. That's what he worked with.
>
> THE COURT: —what appear to be legitimate objections to a great many of them.
>
> MRS. KOPAS: That doesn't matter. I'm not going to stay.
>
> THE COURT: There are a great many of them as to which he has no objections and I'm prepared to accept those in evidence now.

> MRS. KOPAS: Do you know how many? I would like 3,457. I added them up. He allowed eight hundred and something.
>
> THE COURT: I am prepared to have you offer those 800—
>
> MRS. KOPAS: All right.
>
> THE COURT: —in evidence at this time. Are you going to offer them?
>
> MRS. KOPAS: How do I—how do I—no, I'm not. I'm putting everyone in record (sic) and if you don't know—
>
> THE COURT: They're not in the record.
>
> MRS. KOPAS: Well, they sure are. I put them in.
>
> THE COURT: I don't—I don't—
>
> MRS. KOPAS: I can't—
>
> THE COURT: I don't accept them in. The Court will not have—
>
> MRS. KOPAS: I don't care.
>
> THE COURT: —ten boxes of records.
>
> MRS. KOPAS: Ten boxes of records are there marked from 1 to 3,457 and they are going into the record whether you accept them or not and if you don't, just assume that I am putting them in regardless. I don't care. I've had enough of this. In the first place, the most vital issue was the constitutional issue and after reading it last night at home that the respondent absolutely skirted around saying that Judge Tannenwald's decision was so brilliant. That is the decision that the Supreme Court overruled and overturned.[10] I don't think it was so brilliant.

---

9. Prior to trial, the Tax Court received correspondence from the taxpayers, which the court treated as a motion to declare the jeopardy assessment invalid. The government had responded and, additionally, had filed a trial memorandum. Since these pleadings had not previously been served on the taxpayers, the court recessed to give the taxpayers an opportunity to review them. The taxpayers later contended that they were hampered by not having sufficient time to review the government's pleadings and were, therefore, not fully prepared for argument. As the judge explained to the taxpayers, not only did the court recess but also the taxpayers should have been adequately prepared to argue their own motions. At the time the court heard the parties on this motion, the taxpayers did not indicate that they had insufficient time to review the government's objections.

10. Mrs. Kopas must have been referring to Judge Tannenwald's decision in *Human Engineering Institute v. Commissioner*, 61 T.C. 61 (1973), in which he denied the taxpayers' motion to have the jeopardy assessments declared null and void. Prior to trial, the special trial judge had ordered that if the government wished to object to that pretrial motion, counsel should brief its position with respect to the intervening United States Supreme Court cases, *Laing v. United States*, 423 U.S. 161, 96 S.Ct. 473, 46 L.Ed.2d 416 (1975), and *Commissioner v. Shapiro*, 424 U.S. 614, 96 S.Ct. 1062, 47 L.Ed.2d 278 (1976). Mrs. Kopas was also apparently alluding to these cases in the belief that they overruled Judge Tannenwald's decision. In the memorandum filed in response to

Come on Joe. So if you want to keep on continuing this case, keep on continuing. Have fun.

THE COURT: The record will reflect that at 2:28 the petitioners departed.

. . .

TR at 316–18, Vol. VI.

It is patently apparent from the above excerpt that the taxpayers simply walked out of the hearing without availing themselves of the opportunity, presented to them over and over by the court, to present exhibits that they believed would support their position. It is obvious that the taxpayers were hampered by lack of counsel and perhaps by lack of accounting expertise and that they at least appeared confused a great portion of the time. The court, however, attempted to compensate for their lack of knowledge and expertise by patient explanations and suggestions. The taxpayers were afforded every opportunity to explain their position and present their case.

In spite of the paucity of proof ultimately introduced on behalf of the taxpayers at the Tax Court hearing, it is clear from his opinion that the trial judge carefully examined all evidence available. On the basis of this examination, the judge upheld the tax assessments made by the Commissioner except for the determination of fraud penalties for the year 1953.

The findings of the Tax Court were by no means clearly erroneous. *See Commissioner v. Duberstein*, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960); *Biggs v. Commissioner, supra.* Nor did the Tax Court err in denying the taxpayers a posttrial hearing. Finally, the Tax Court provided the taxpayers every opportunity to present documentation and otherwise pursue their arguments in support of their position.

Accordingly, the decision of the Tax Court is affirmed.

the trial judge's order, the government distinguished *Laing* and *Shapiro* and, in denying the taxpayers' motion, the trial judge adopted the government's analysis. TR at 11, Vol. VII.