**KALAMAZOO OIL COMPANY, Petitioner-Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

No. 81–1613.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 22, 1982.

Decided Nov. 29, 1982.

 

Benjamin W. Wise, Wise, Pelletier & Sayen, Kalamazoo, Mich., for petitioner-appellant.

Kenneth W. Gideon, Chief Counsel, I.R.S., Washington, D.C., John F. Murray, Michael L. Paup, Glenn L. Archer, Jr., Ann Belanger Durney, Melvin E. Clark, Tax Division, Dept. of Justice, Washington, D.C., for respondent-appellee.

Before KENNEDY and WELLFORD, Circuit Judges, and CECIL, Senior Circuit Judge.

PER CURIAM.

Kalamazoo Oil Company (hereinafter "petitioner") appeals from a judgment of the United States Tax Court affirming the Commissioner's finding that annual payments of $7,000 made by petitioner to one of its shareholders, purportedly as consideration for a covenant not to compete, did not constitute ordinary and necessary business expenses, as defined by section 162(a) of the Internal Revenue Code of 1954.

Kalamazoo Oil Company, incorporated under the laws of Michigan and having its principal place of business in Kalamazoo, Michigan, is engaged in the business of selling gasoline, fuel oil, motor oil, and other petroleum products at the wholesale and retail levels. Petitioner began as a partnership in the late 1940s and incorporated in 1955. Petitioner's original shareholders were Marinus OnderLinde (Marinus), Bernard Sonnevil (Bernard), and Edward OnderLinde (Edward). Each shareholder owned one-third of petitioner's total issued and outstanding voting common stock.

Edward sold his shares of stock to petitioner for $40,000 on June 13, 1962. Petitioner did not bind Edward under a covenant not to compete, purportedly for the following reasons: (1) Edward moved out-state for his health; (2) Edward expressed no further interest in the petroleum business; and (3) Edward posed no threat as he had disassociated himself from Michigan

and the petroleum business by putting his home up for sale and making a down payment on a chicken ranch in Arizona.

As petitioner's only remaining shareholders, Bernard and Marinus each purchased a life insurance policy so as to provide funds, available upon the death of either one of them, to buy the stock of that deceased shareholder. Bernard and Marinus sold these life insurance policies to petitioner, receiving as consideration notes payable in the amount of the then cash surrender value of the policies.

On February 20, 1974, Bernard and Marinus transferred all of their stock to petitioner, which reissued the shares to Bernard and Marinus, each as trustee for a revocable *inter vivos* trust established for his own, respective, benefit. At that time, also, Bernard, Marinus, and petitioner entered into a stock redemption agreement to be triggered upon the death of either shareholder.

In February 1975, in anticipation of the prospective retirement of Marinus, Bernard and Marinus cancelled their prior stock redemption agreement and entered into a new agreement. The articles of incorporation of petitioner were amended to differentiate between class A common stock (voting) and class B common stock (non-voting). Under the new stock redemption agreement, Marinus exchanged all of his stock for non-voting class B stock. Marinus, individually and as trustee, was to then sell all his class B stock to petitioner for $100,000, according to the following payment schedule:

(a) Petitioner holds an option to buy, and Marinus to sell, 5 per cent of the shareholdings annually at $12.44555 per share until petitioner has purchased 25% of Marinus' stock;

(b) The balance of Marinus' stock is to be sold upon his death to petitioner at that same price per share;

(c) Petitioner is obligated to continue to pay the premiums on Marinus' life

insurance policy, the proceeds of which ($75,000) are to be applied toward the purchase price of the balance of stock still held by Marinus upon his death; and

(d) *In consideration of $7,000 per year for the remainder of his life, Marinus agrees not to compete with petitioner in Kalamazoo County for the rest of his life.*

For each of the taxable years 1975 and 1976, petitioner claimed a deduction of $7,000 as an ordinary and necessary business expense incurred as payment made in consideration for the above-mentioned covenant. The Commissioner determined that the payments were dividends or part of a capital transaction and, therefore, not deductible. He assessed deficiencies against petitioner in the amounts of $1,540 and $3,092 for 1975 and 1976, respectively.[1] That decision was affirmed by the United States Tax Court[2] and constitutes the basis of this appeal.

Section 162(a) of the Internal Revenue Code of 1954 provides that a taxpayer may deduct all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. The taxpayer has the burden of establishing his right to the claimed deduction. 26 I.R.C. § 7453 (1954); *Welch v. Helvering,* 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933); *Human Engineering Institute v. C.I.R.,* 629 F.2d 1160, 1163 (6th Cir.1980); *Biggs v. C.I.R.,* 440 F.2d 1, 5 (6th Cir.1971). Further, the rulings of the Commissioner with respect to whether a particular expenditure is an ordinary and necessary business expense have the support of a presumption of correctness, *Welch, supra,* and such questions of fact will be upheld on appeal unless shown to be clearly erroneous. *See* 26 I.R.C. § 7482(a) (1954); *C.I.R. v. Duberstein,* 363 U.S. 278, 291, 80 S.Ct. 1190, 1199, 24 L.Ed.2d 1218 (1960); *Biggs v.*

---

1. All of the 1975 deficiency is contested in the instant action, while only $2,681 of the 1976 deficiency is contested, $411 having been conceded as due and owing.

2. 42 Tax Ct.Mem.Dec. 304 (July, 1981) (CCH).

*C.I.R., supra; Southeastern Canteen Co. v. C.I.R.,* 410 F.2d 615, 622 (6th Cir.), *cert. denied,* 396 U.S. 833, 90 S.Ct. 88, 24 L.Ed.2d 83 (1969). "Careful adherence to this principle will result in a more orderly and uniform system of tax deductions in a field necessarily beset by innumerable complexities." *C.I.R. v. Heininger,* 320 U.S. 467, 475, 64 S.Ct. 249, 254, 88 L.Ed. 171 (1943).

The Commissioner applied the correct legal principle in evaluating petitioner's purported entitlement to these deductions as ordinary and necessary business expenses.

To provide a basis for such deductions the "covenant must have some independent basis in fact or some arguable relationship with business reality such that reasonable men, genuinely concerned with their economic future, might bargain for such an agreement."

*Nye v. Comm'r,* 50 T.C. 203, 219 (1968), quoting *Schulz v. C.I.R.,* 294 F.2d 52, 55 (9th Cir.1961). *See Spector · v. C.I.R.,* 641 F.2d 376, 383 (5th Cir.1981), *rev'g* 71 T.C. 1017 (1979); *Lemery v. C.I.R.,* 52 T.C. 367, 376 (1969), *aff'd* 451 F.2d 173 (9th Cir.1971). Accordingly, our review is limited to determining whether the Commissioner's findings of fact were clearly erroneous.

■ Petitioner contends that the Commissioner erred in rejecting its claimed deductions, arguing that in its agreement with Marinus a specified dollar value ($7,000) was expressly assigned to the covenant. Although the form which parties use to effect their transaction must be considered, it has been held that "a court may look beyond the form of the contract to see whether the apparent agreement has substance." *Lemery v. C.I.R.,* 52 T.C. at 376; *Schultz v. C.I.R.,* 34 T.C. 235 (1960), *aff'd* 294 F.2d 52 (9th Cir.1961).

■ Petitioner submits that upon his retirement Marinus retained only a right to receive money ($100,000); *i.e.,* he acquired and retained only the position of creditor. The Commissioner, on the other hand, concluded that Marinus retained sufficient interest in the future financial success of petitioner to produce the practical effect that the noncompetition agreement was merely to restrict Marinus from competing with himself.

In arriving at his conclusion, the Commissioner relied upon the fact that when Marinus retired from the business, although he no longer functioned as an employee, officer, and director of the corporation, he did not sever his interest in petitioner.

Rather, he merely exchanged his voting stock for nonvoting stock, and retained a 50-percent equity interest in the corporation. (footnote omitted)

\* \* \* \* \* \*

In order for Marinus to receive the $100,000 sale price, any dividends which might be declared on his stock, payment of the note given for the cash value of the transferred life insurance policy, and the $7,000 per year lifetime payment, petitioner had to continue as a viable business enterprise.

42 Tax Ct.Mem.Dec. at 306.

Although there is nothing inherently suspect in a noncompetition agreement, we cannot say that the Tax Court was clearly erroneous in its factual conclusion that the covenant was merely a paper promise designed to provide petitioner with deductions for part of the cost of purchasing Marinus' stock.

The evidence which casts doubt upon the reality of the purported covenant includes the fact that Marinus was nearly 65 when the covenant was established; he testified that he did not intend to compete; he spent much of his time out-state vacationing in Florida; he considered himself to be on friendly terms with Bernard; no covenant had been established with Edward when he severed his relationship with petitioner in 1962; and the covenant was for life rather than a period of years during which it might have been reasonable to be concerned about competition from Marinus.

The record supports the Tax Court's conclusion that petitioner's annual payments of $7,000 did not constitute ordinary and necessary business expenses.

Accordingly, we uphold the Tax Court's affirmance of the Commissioner's disallowance of the amounts claimed as ordinary and necessary business expenses.